CASE 96.—PROSECUTION AGAINST W. D. OLDHAM FOR CUTTING ANOTHER IN SUDDEN HEAT AND PAS-SION.—February 25, 1910.

## Oldham v. Commonwealth

Appeal from Madison Circuit Court,

J. M. BENTON, Circuit Judge.

Defendant convicted and appeals.—Affirmed.

1.  Homicide—Assault to Kill—Sufficiency of Evidence.—In a prosecution for malicious cutting with intent to kill, evidence held to support a conviction for cutting and wounding in sudden heat and passion.
2.  Criminal Law—Appeal—Verdict—Conclusiveness.—The appellate court will not disturb a verdict of conviction if it is supported by any evidence.
3.  Witnesses—Bias—Interest in Event of Criminal Prosecution. —In a prosecution for malicious cutting with intent to kill, evidence was admissible that the prosecuting witness had instituted a pending civil damage action against accused for the same cutting for the purpose of showing probable bias by him as a witness, arising from his interest in securing a conviction because of the effect it would have on the civil suit.

4. Criminal Law—Appeal—Harmless Error—Exclusion of Evidence.—Where prejudice of the prosecuting witness against accused sufficiently appeared to the jury from his testimony and demeanor as a witness, the exclusion of evidence as to such prejudice was not prejudicial; Cr. Code Prac., section 340, forbidding reversals of convictions for minor errors.

5. Criminal Law—Trial—Conduct—Argument—Argument by State's Attorney.—In a prosecution for malicious cutting with intent to kill, where the cutting occurred in a poker game, during which accused gave prosecuting witness a check for losses, and afterwards told him he would not pay it if prosecuting witness refused to continue playing, a ruling permitting remarks by the prosecuting attorney in argument that, when accused said he would not pay the check if the playing was not continued, prosecuting witness knew from his long acquaintance with accused that he was not honest or courageous, was not error.

6. Criminal Law—Appeal—Harmless Error—Prejudicial Effect —Argument of Counsel.—Even if it was improper to permit the remarks, the error was too trivial to be reversible.

7. Criminal Law—Trial—Argument—Latitude.—Within the limitation that he must confine himself to the facts in evidence and fair inference therefrom, and to the law applied thereto by the court, much latitude is allowed an attorney in argument, and within such limits he may present his case to the jury with all the force and persuasiveness he can command.

A. R. BURNAM & SON, J. A. SULLIVAN, J. TEVIS COBB and S. M. WALLACE for appellant.

JAMES BREATHITT, Attorney General, TOM B. McGREGOR, Assistant Attorney General. for Commonwealth.

Opinion of the Court by Judge Settle—Affirming.

The appellant, W. D. Oldham, was indicted in the Madison circuit court for the malicious cutting and wounding of Boyd Wagers with intent to kill him. The trial resulted in a verdict finding him guilty of cutting and wounding in sudden heat and passion and fixed his punishment at a fine of $500. Judgment was duly entered upon the verdict and a new trial refused appellant.

Three grounds are presented for a reversal of the judgment: (1) That the verdict is not supported by the evidence and was the result of passion or prejudice on the part of the jury. (2) That the court erred in excluding competent evidence. (3) That the court erred in permitting certain alleged inflammatory and incompetent statements from the commonwealth's attorney in argument to the jury.

According to the evidence, the cutting and wounding of Wagers was done under the following circumstances: Appellant, Wagers and James, with two other persons, met at night in a secluded room in the city of Richmond for a game of poker. After playing awhile, two of the company went to their homes, leaving appellant, Wagers and James to continue the game. At one time during the progress of the game appellant had won of Wagers $127, but at that juncture luck turned against appellant, and by the end of the game he had lost to Wagers $200, for which he gave Wagers his check on one of the banks of Richmond. When the check was received by Wagers, which was near daylight, he said he would go home, thereupon appellant objected to his quitting the game until certain unused chips upon the table gave out, but Wagers persisted in his intention of quitting play, and appellant then told him if he did so the check he had given him would not be paid by the bank upon presentation, to which Wagers replied: "I am going to take this check tomorrow morning and present it, and, if they don't pay it, I will meet you on the street and we will have some trouble." Appellant in response to that statement said: "All right, I will be fixed for you, come on." This declaration provoked Wagers to say: "Give me my money back, and you can have it," meaning the check. Appellant re-

plied: "No; I am not going to give you a damn cent." Angered by this declaration, Wagers drew his pocketknife, and opening it said to appellant: "I've a notion to cut your head off."

Immediately following this demonstration, he and appellant engaged in a fight, during which they struggled about the room for some moments, but were finally separated by James. After they were separated, according to the testimony of Wagers, appellant, who stood on the other side of the room from him, feeling in his pocket drew a knife, and said: "I have found what I have been looking for." Wagers further testified that, after drawing the knife, appellant advanced upon him and renewed the fight, which continued for a while and until they were again separated by James; that the combatants then agreed to fight no more, and Wagers shut the blade of his knife, believing appellant had done likewise, but that, instead of doing so, appellant unexpectedly to him (Wagers) cut and wounded him in or near the neck by reaching over the shoulder of James. The wound was a serious one, causing Wagers to faint in the presence of appellant and James, and giving him much suffering for several weeks. Appellant's testimony was contradictory and much of that of Wagers, and was to the effect that the latter was the aggressor in bringing on the fight and in renewing it, that appellant was all the time on the defensive, and that the cutting and wounding of Wagers was done by him in his necessary self-defence and upon the belief, for which he had reasonable grounds, that he was about to be killed or receive great bodily harm at the hands of Wagers, and that he had as it reasonably appeared to him, no other safe or apparently safe means of avoiding the danger. James, in the main, corroborated appellant's version of the difficulty.

It will be seen from the above synopsis of the evidence that there is no ground upon which to rest appellant's contention that the verdict is without support from, or flagrantly against, the evidence. According to Wagers' version of the difficulty, the cutting was done by appellant following the separation of the parties by James after Wagers' had ceased to fight and in good faith withdrew from the combat, and when he was not expecting an attack from appellant. According to appellant's version of the difficulty, the cutting of Wagers was in his necessary self-defense and therefore excusable. According to James' account of the difficulty, though Wagers was the first and principal aggressor and commenced the combat, appellant was from the start not an unwilling actor and at times not on the defensive, and from this point of view, and the evidence as a whole, it would not be wide of the mark to conclude that the cutting and wounding of Wagers was done in a sudden affray. So, if the jury accepted Wagers' version of the difficulty as the true one, which it was their province to do, it would account for the verdict finding that the cutting was done in sudden heat and passion. In no event can it be said that there was no evidence to support the verdict; and, while there might be some ground for saying the verdict is contrary to the weight of the evidence, none exists for declaring it flagrantly against the evidence. The rule of practice in this state in criminal cases is that the court will not on appeal disturb the verdict, if there is any evidence to support it. We have been unable to find in the record any reason for declaring the verdict the result of either passion or prejudice on the part of the jury.

The evidence, the exclusion of which the appellant complains of, was that offered by him to prove that Wagers, the prosecuting witness, had instituted a civil action for damages against appellant for cutting and wounding him, and that the action was pending and undetermined at the time of appellant's trial under the indictment for that offense. It cannot be denied that the law books hold such evidence competent for the purpose of discrediting the witness by showing the bias in his mind that might be supposed to arise from his interest in securing the conviction of appellant under the indictment, for the moral effect it would be supposed to have upon the witness' chances of obtaining a verdict in the civil action for damages; but was the exclusion of this evidence such prejudicial error as will justify a reversal?

The error committed by the court in rejecting this evidence was purely technical and in effect inconsequential. If there was on the part of Wagers any bias arising from self interest, or hostility toward appellant it was doubtless sufficiently manifested by his testimony and demeanor as a witness to be readily discovered by the jury. We are therefore unable to see that the exclusion of the testimony in question could have been seriously hurtful to appellant. Section 340, Criminal Code of Practice, forbids the reversal of a judgment of conviction for minor errors appearing in the record. As said by this court in Gordon v. Commonwealth (decided January 25, 1910) 124 S. W. 806: "The tendency of courts generally and of this court in particular in its more recent decisions has been to break away from technical rulings and to examine the record with a view of ascertaining whether or not the accused has been given

Oldham v. Commonwealth.

a fair trial, and, if upon such examination it appears that during the progress of the trial no substantial errors were committed such as would calculate to prevent the accused from having  substantial justice meted out to him, the judgment has been affirmed. * * *   There being ample evidence to support the finding of the jury, in fact, the preponderance of the evidence being in favor of such finding, we are of the opinion that the judgment should be and it is affirmed." In Parrish v. Commonwealth, 123 S. W. 339, we also said: "Therefore when a person who has been convicted of crime appeals to this court, he must be able to affirmatively show errors of law that have prejudiced his substantial rights, and these errors must appear to us to be of sufficient importance to direct a new trial. The presumption of innocence that protects the accused ends when a judgment of conviction is entered against him in the trial court. On appeal, we must, and do, assume that his trial was regular, and that his guilt was duly established before the tribunal created by law for the purpose of inquiring into it."   Collett v. Commonwealth, 121 S. W. 426.

The remarks of the commonwealth's attorney in argument to the jury to which appellant takes exception, were in substance that, when appellant said he would not pay the check if Wagers did not play longer, he (the commonwealth's attorney) feared that Wagers knew from his long acquaintance with appellant that he was not honest or courageous. It will be found upon examination of the record that this statement of the commonwealth's attorney was made in reply to what had been urged by appellant's counsel in respect to his high standing and character. While the remark had better been left unsaid, we do

not regard it as sufficient departure from the record to constitute prejudicial error. Our view of it can be expressed in the following quotation from the case of Houseman v. Commonwealth, 128 Ky. 818, 110 S. W. 236, 33 Ky. Law Rep. 311: "Much latitude is of necessity allowed an attorney in the presentation of his case; the only limitation being such as required him to confine himself to the facts introduced in evidence, and a fair and reasonable deduction and conclusion to be drawn therefrom, and the application of the law, as given by the court, to the facts proven. Controlled, regulated, and bounded alone by those limitations an advocate may, with perfect propriety appeal to the jury with all the power, force, and persuasiveness which his learning, skill, and experience enable him to command, and of this character of argument the accused may not complain, even though he feels that his conviction may be traceable more directly to the argument of counsel than to the facts proven." The ruling by the court in permitting the statement in question from the commonwealth's attorney was not error at all, and was too trivial to justify a reversal of the case.

Finding in the record no cause for holding that appellant did not have an impartial trial, the judgment is affirmed.