CASE 73.—PROSECUTION AGAINST JOE  REED FOR MUR-
DER.—June 1, 1910.

## Reed v. Commonwealth.

Appeal from Washington Circuit Court.

I. H. THURMAN, Circuit Judge.

Defendant convicted and appeals.—Affirmed.

1.  Constitutional Law—"Due Process of Law."—Due process of
law in a criminal case is a trial according to the rules en-
acted by the Legislature or adopted by the courts for the
prosecution of crimes, and, if there are special rules gov-
erning a trial of the particular crime with which accused is
charged, then, in addition to the rules prescribed for the
conduct of criminal prosecutions in general, he must be given
the benefit of such additional rules.

2.  Constitutional Law—Due Process of  Law—Pleas to  Indict-
ment.—Cr. Code Prac. section 154, provides that, before ac-
cused is put on his trial, he must plead.  Held, that the
purpose of the plea is to inform the jury of the issues which
it is to try, and, while the indictment should be read to ac-
cused by the clerk before the jury is sworn and his plea en-
tered, accused was not deprived of a trial by due process of
law because he did not plead before the jury was sworn,
and counsel for the state, after the jury was sworn, read the
indictment to the jury in the presence and hearing of ac-
cused, and stated that accused's plea was "not guilty" without
objection of accused or his counsel; the jury in such case
being apprised of the issue to be tried.

3   Criminal Law—Appeal—Prejudicial Errors.—Under Cr. Code
Prac. section 340, providing that a conviction shall be re-
versed for any  error of law appearing  on  the  record
when, upon consideration of the whole case, the court is sat-
isfied that the substantial rights of accused have been preju-
diced thereby, the converse also being true, if it appears from
an examination of the record that the substantial rights of
accused had not been prejudiced during the trial, the con-
viction should not be reversed, and the failure to call upon

accused to plead or his failure to plead would not be ground for reversal, where it appears from the record that an issue was in fact formed and tried out before the jury.

W. C. McCHORD and JOHN W. LEWIS for appellant.

JAMES BREATHITT, Attorney General, and TOM B. Mc-GREGOR, Assistant Attorney General, for the Commonwealth.

OPINION OF THE COURT BY JUDGE LASSING—Affirming.

Appellant, Joe Reed, was indicted jointly with Rod Johnson for murder. He demanded, and was granted, a separate trial. Upon the call of his case the commonwealth answered ready, and the appellant appeared in person and by counsel. A jury was selected and sworn to try the case. The county attorney, representing the commonwealth, read the indictment to the jury in the presence of the accused and his counsel, and stated to the jury, when he had finished reading it, that the defendant waived a formal arraignment and pleaded not guilty. No objection was made by the counsel for accused to this statement by the county attorney, and thereafter the trial proceeded regularly to judgment. The jury found the accused guilty and fixed his punishment at confinement for a term of years in the penitentiary. Judgment was entered upon this verdict, and, a motion for a new trial having been overruled, the defendant appeals.

The chief ground urged for a new trial in the lower court, and for a reversal here, is that the defendant was not called upon to state his plea, and did not do so. In overruling the motion for a new trial, the trial judge recited the fact that the accused did not enter a plea in person, and none was made for him by the

court. But the court was of opinion that the necessity therefor was waived by the accused when he and his counsel made no objection to the statement by the county attorney that he waived formal arraignment, and pleaded not guilty to the indictment. We are now asked to pass upon this question. Undoubtedly the conduct of the accused and his counsel in sitting silent when the county attorney made the statement to the jury which the record shows he did, to wit, that the accused waived a formal arraignment and pleaded not guilty, was a waiver of the right to state in person or by counsel of his own selection his plea, or of having the court enter the plea of not guilty for him, if this right is one that can be waived. It is urged for the accused that it is a constitutional right, guaranteed by both the Constitutions of this state and the United States, and cannot be waived. It is not such in terms, and, unless it is covered by that provision of the Constitution which provides that no one shall be deprived of his liberty without due process of law, it is not a constitutional right, and may be waived. It becomes of primary importance then to determine what is due process of law.

Cooley, in his Constitutional Limitations, 441, defines due process of law to mean "such an exercise of the powers of a government as the settled maxims of law permit and sanction, and under such safeguards for the protection of individual rights as those maxims prescribe for the class of cases to which the one in question belongs." This definition has been substantially approved by the Supreme Courts of many states, including New York, Michigan, Colorado, California, and the United States. Bouvier defines it as "law in its regular course of administration through courts of justice." Otherwise express-

ed, due process means a trial according to the rules enacted by the Legislature or adopted by the courts for the prosecution of crimes, and, if there are special rules governing a trial of the particular crime with which the accused stands charged, then, in addition to the rules prescribed for the conduct of criminal prosecutions in general, he must be given the benefit of such additional rules. Was the accused given such a trial? This brings into consideration the various provisions of the Crimnal Code relative to the plea of the defendant and the decisions of this court in the construction and practical application thereof. Section 154 of the Criminal Code of Practice provides that, before the accused is put upon his trial, he must plead. His plea may be either guilty, not guilty, or a former conviction or acquittal of the offense charged either of which may be pleaded with or without the plea of not guilty. Cr. Code Prac. section 172. And section 175 of the Criminal Code of Practice provides that "the plea of not guilty is a denial of every material allegation in the indictment; and all matters of fact tending to establish a defense, other than a former conviction or acquittal, may be given in evidence under it." The purpose of the plea is to inform or advise the jury of the issue which it is to try. Before the jury was sworn, the indictment should have been read to the accused by the clerk and his plea entered. But this was overlooked by the court, and the indictment was not read to him until after the jury was sworn. When it was read to the jury in the presence and hearing of the accused, and the jury informed that his plea was "not guilty," the accused, having heard the indictment read, knew and understood the charge upon which he was about to be tried, and the defense interposed by the county

attorney for him must have been satisfactory, else he or his counsel would have entered an objection. It is true that, when the jury was sworn, no issue had been joined. But immediately that the jury were sworn the indictment was read, and the statement made that the defendant entered a plea of "not guilty." Clearly the jury understood what the issue was. The jurors could not have been better advised if this same statement had been made by the accused in person, or by his counsel for him, or by the court in the event that he or his counsel for him declined to plead. If, then, the purpose of the plea is to advise the jury as to what issue it is to try, it is wholly immaterial how that information is imparted to it, so so long as it is received in a way not calculated to prejudice the rights of the accused. The object of the plea being to raise, create, or make an issue for the jury to try, the ends of the law are satisfied when the plea is stated; and, as the plea stated for the accused in this case was the most favorable that could possibly be made for him, we fail to see wherein any ground of complaint is afforded because the plea was entered for him by the representative of the commonwealth rather than by his counsel or himself in person. Section 340 of the Criminal Code of Practice provides that "a judgment of conviction shall be reversed for any error of law appearing on the record when, upon consideration of the whole case, the court is satisfied that the substantial rights of the defendant have been prejudiced thereby." The converse of this proposition is also true, and, if it appears from an examination of the record that the substantial rights of the defendant have not been prejudiced during the progress of the trial, no reversal should be allowed. Now, conceding that it was the

right of the accused to have his own counsel plead
for him or to plead in person before the jury was
sworn, still it cannot be said that he was prejudiced
in the slightest—much less in a substantial manner—
because this plea was stated by the county attorney
after the jury was sworn. The vital question is: Was
an issue presented to the jury for its consideration?
This question must be answered in the affirmative.
This being true, the accused was not denied due pro-
cess of law; but, on the contrary, the trial, as con-
ducted in fact, afforded him every right guaranteed
to him by the Constitution, and, while the issue was
not made or raised in strict conformity to the re-
quirements of the Code, it was nevertheless made
and presented to the jury in such manner and form
as to leave no room for doubt that it was understood
by the jury.

The question is: Has the accused had a substan-
tially fair trial of the merits of his case? If so, the
ends of justice and the law have been satisfied, and he
is afforded no meritorious ground of complaint be-
cause of some technical or formal error, nor has he
been deprived of his liberty without due process of
law. This is not a new question in this court, for in
the case of Meece v. Commonwealth, 78 Ky. 586, de-
cided in 1880, a reversal in a felony case was asked
because the record failed to show that the accused
was arraigned, or that any plea was entered in his
behalf. Upon examination this contention was found
to be true, but said the court: "It is manifest from
the entire record that an issue was made, and the ac-
cused had a fair and impartial trial. * * * The ac-
cused was present during the progress of the trial,
and until his case was finally submitted to the jury,
and the attention of the court was at no time called

to the fact that the plea had not been entered of record. It would be a mockery of justice, as well as trifling with the action of the court below, to hold that no legal trial was had upon the facts of this case.'' Here, although there was no record of either arraignment or plea, the court held that, as it appeared from the record that an issue was formed and the accused had had a fair trial of his case, he was afforded no ground of complaint. And, again, in the case of Combs v. Commonwealth, 104 S. W. 270, 31 Ky. Law Rep. 822, it was argued, as ground for a reversal, that the indictment was not read to the jury and the plea of the defendant stated. In passing upon this point, the court said: ''The purpose of the Code provision in requiring the indictment to be read and the plea of the defendant stated is to inform the jury at the very inception of the case of the nature of the charge and the plea of the defendant thereto; and, when this is substantially done, although the Code is not literally followed, it will not amount to reversible error.'' In Galloway v. Commonwealth, 5 Ky. Law Rep. 213, it is held that, while it is essential that the indictment should be read and the plea of the defendant stated to the jury, it was immaterial that the indictment was read by counsel employed to prosecute rather than by the clerk or commonwealth's attorney. And in Howard v. Commonwealth, 67 S. W. 1003, 24 Ky. Law Rep. 91, where a reversal was asked because the record failed to show that the indictment was read to the jury or the plea of the defendant stated, the court held that, as the record showed that there had been a substantial compliance with the Code provision and an issue joined, the point was not well taken. The case of Hendrickson v. Commonwealth, 64 S. W. 954, 23 Ky. Law Rep. 1191, while holding

that the Code provision requiring the indictment to
be read and the plea stated is mandatory, declares
that a substantial compliance with such provisions
satisfies the ends of the law, the reading of the in-
dictment and the stating of the plea being to inform
the jury of the issue they are to try.

From the foregoing opinions it is clear that two
principles governing the practice in criminal cases
in this state are thoroughly established: First, that
the purpose of the  reading of the indictment and
statement of the plea is to inform the jury at the
outset of the trial of the issue which it is to try; and,
second, that, although the Code provisions are not
literally followed, no ground of complaint is thereby
afforded where it is made to appear that an issue
has been formed—that is, that the indictment has
been read to the jury and the jury informed as to
what the defense is, viz., guilty or not guilty.  And
it is not a reversible error if the record fails to show
that the accused was called upon to plead, or did in
fact plead, if it satisfactorily appears from an in-
spection of the entire record that an issue was in fact
formed and tried out before the jury.  We are aware
that a contrary rule has been announced by the Su-
preme Court of the United States and some of our
sister states, but an examination of those cases shows
that the reasoning is highly technical, and in most in-
stances results from a refusal of the court to. break
away from a rule of practice inaugurated at a time
when more attention was given to form in criminal
prosecutions than the rules of practice in force in
this court would require.

During the early periods of English history, when
one accused of felony was not allowed to testify or
be represented by counsel, and the punishment pre-

scribed was in many instances most brutal, a practice was indulged by the judges of giving the accused such benefit as might come to him by a rigid enforcement of all of the technical rules of law governing the trial. Under such practice and the strict observance of forms and modes of procedure, coupled with the recognition of objections frequently highly technical, the unfortunate prisoner occasionally found an avenue of escape. But the strict enforcement of these rules, which were undoubtedly adopted for the benefit of the accused, at times worked a great hardship. For instance, if a prisoner accused of a felony refused to answer when arraigned at the bar, he was subjected to the severest punishment, often resulting in his death, in an effort on the part of the court to compel him to answer. The court would not permit him to be tried without his having entered his plea, but would kill him in an effort to make him plead. Such an adherence to form is shocking to our sense of justice and right, and yet this practice was indulged to such an extent that the business of the courts was frequently suspended because of the number of prisoners who refused to plead, their trials being suspended because thereof, while the judge would inflict severe corporal punishment in an attempt to make them plead. This punishment at times consisted of confining the accused in a dungeon, pinioned to the floor, with a heavy iron weight across his chest, where he was left without food or water until he was content to plead or die. Those were days when great consideration was given to form and but little to substance. Happily they have passed away, and in this age the necessity for such cruel punishment has been obviated by the enactment of such laws as give to the accused

Reed v. Commonwealth.

the broadest opportunity to present his defense, and, if he fails to plead, the whole trouble is overcome by the court's entering a plea of "not guilty" for him, thus giving him the benefit of the most favorable plea which he could make. As was said in the case of Gordon v. Commonwealth, 124 S. W. 806; 136 Ky. 508: "The tendency of courts generally, and of this court in particular in its more recent decisions, has been to break away from technical rulings and to examine the record with a view of ascertaining whether or not the accused has been given a fair trial; and, if upon such examination it appears that during the progress of the trial no substantial errors were committed such as would be calculated to prevent the accused from having substantial justice meted out to him, the judgment has been affirmed." In harmony with the view expressed in the opinion from which we have just quoted are the opinions in the cases of Oldham v. Commonwealth, 125 S. W. 242; 136 Ky. 789; Farrell v. Commonwealth (decided April 4, 1910) 127 S. W. 162; Parrish v. Commonwealth, 123 S. W. 339; 136 Ky. 77, and Hargis v. Commonwealth, 123 S. W. 239; 135 Ky. 578. A criminal trial should proceed as the Code directs, but the fact that it does not, furnishes no ground for reversal in the absence of a showing that the irregularities complained of were such as prevented the accused from having a substantially fair trial. After a careful consideration of the case before us, we are convinced that the irregularities complained of in no way contributed to the verdict of "guilty," or in the slightest prejudiced appellant's rights. The judgment is therefore affirmed.

Nunn, J.   I dissent for the reason that defendant did not receive a trial of his case as guaranteed to him by the Constitution.