(No. 14723.—Reversed and remanded.)

PAUL SWANLUND, Appellant, vs. THE ROCKFORD AND
INTERURBAN RAILWAY COMPANY, Appellee.

*Opinion filed October 21, 1922—Rehearing denied Dec. 12, 1922.*

1. NEGLIGENCE—*when instruction as to care required of an interurban railway company is misleading.* In an action against an interurban railway company for damages for personal injuries received by the plaintiff in a collision at a street crossing between a motorcycle and a car, an instruction that "the law does not require or exact of an interurban railway company that its servants and employees shall at all times, when running cars, be on guard against * * * unusual or extraordinary occurrences," is misleading, where there was nothing unusual or extraordinary about the particular accident.

2. SAME—*a passenger in a vehicle is not necessarily liable for negligence of driver.* The negligence of the driver in sole charge of a vehicle cannot necessarily be imputed to a passenger in the vehicle so as to bar recovery for injuries to the passenger on the ground of contributory negligence, but the passenger should, when he learns of a threatened accident and has an opportunity to avoid it, warn the driver of the vehicle.

3. SAME—*what question as to another suit pending is proper in action against interurban railway company.* In an action against an interurban company for damages for personal injuries received by a passenger in a motorcycle which collided with an interurban car, the driver of the motorcycle, who was also injured, should be permitted to answer the question whether or not he had a suit pending against the company.

CARTWRIGHT, J., and THOMPSON, C. J., dissenting.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Winnebago county; the Hon. ROBERT K. WELSH, Judge, presiding.

ROY F. HALL, and J. E. GOEMBEL, for appellant.

FISHER, NORTH, WELSH & LINSCOTT, for appellee.

Mr. JUSTICE CARTER delivered the opinion of the court:

This was an action brought in the circuit court of Winnebago county by Paul Swanlund, appellant, against the Rockford and Interurban Railway Company, appellee, to recover damages for personal injuries sustained July 28, 1917. On the trial of the case before a jury a verdict was rendered finding appellee not guilty, and judgment was entered on the verdict. On appeal to the Appellate Court the judgment of the trial court was affirmed and that court granted a certificate of importance, and the case has been brought here by appeal for further review.

It appears from the record that on July 28, 1917, appellant was riding in the side-car of a motorcycle driven by Ludwig Engdahl. The motorcycle was being driven south on Tenth street towards Fifth avenue, in Rockford. Tenth street runs north and south and Fifth avenue east and west. On Fifth avenue there is a single-track car line, which is used by the Rockford and Interurban Railway Company in operating its cars between Belvidere and Rockford. There is considerable conflict in the testimony as to just how the accident happened, about seventeen witnesses testifying for appellant and about eleven for appellee. Engdahl testified that he was driving the motorcycle on the morning of the collision; that he had been driving motorcycles for about four years and this particular one for about two years; that he, with Swanlund in the side-car, was driving south on Tenth street, on the right-hand side of the street; that when he saw the interurban car, which was going west, they were about four feet from the interurban track and did not have time to cross the track to avoid a collision; that he turned his motorcycle quickly to the west; that the front wheel of the motorcycle was then over the rail and when the car struck them they were about the middle of the street car track; that he looked both ways before he got to Fifth avenue and saw nothing approaching from either direction;

that when he got within eight or ten feet of the track on Fifth avenue he looked west first and saw nothing coming and then looked in the other direction and saw the interurban car; that there is a depression in Fifth avenue east of Tenth street, and at the time of the accident there were a lot of limbs hanging down from the trees on Fifth avenue which prevented him from seeing a great distance down the avenue; that he thought the interurban car was traveling about thirty miles an hour when he saw it and that he could not tell how fast the motorcycle was going; that he had heard no bell or whistle from the interurban car until just before the motorcycle was struck, when the bell started to ring; that appellant had ridden with the witness in his motorcycle three times before on their way to Camp Grant, which is three or four miles south of the place of the accident. The record shows that both appellant and Engdahl were working at Camp Grant at the time; that they lived in Rockford and went to work at Camp Grant in the morning and returned in the evening.

Appellant testified that he was about twenty-six years old at the time of the accident; that he and Engdahl were proceeding in the motorcycle, at 6:40 in the morning, from Rockford to Camp Grant at the rate of about eight or ten miles an hour; that as they approached Fifth avenue he looked to the west first and then in another direction but did not see any car approaching until just before it struck them, when it was three or four feet away; that he thought the interurban car was traveling at the rate of about thirty miles an hour at that time; that there was no bell or whistle sounded before the collision; that the interurban car struck the middle of the motorcycle; that when they were approaching Fifth avenue he did not say anything to Engdahl as to his driving; that when he first noticed the interurban car the motorcycle had not changed its course in driving south on Tenth street, but that the driver changed the course of the motorcycle just before they were struck. He

further testified that he had been in the United States service during the late war; that he was thrown from the motorcycle by the accident and rendered unconscious for three or four days.

Dr. Goembel testified that he has been a surgeon in Rockford for years; that he saw appellant at St. Anthony's Hospital about seven in the morning; that he was unconscious and suffering, bleeding from a scalp wound and from his left ear drum; that there were several lacerations in his scalp, including one cut three inches long or more; that on examining him he found the scalp was torn loose from the skull bone, around the cut; that the skull was fractured beneath the wound and the ear drum was ruptured. He testified, also, that time only would tell whether Swanlund could be completely cured as to the accident. Other doctors testified practically to the same effect as to the result of the injury and the chances for full recovery.

Several witnesses testified for appellant who saw the accident, some of them to the effect that the interurban car was traveling about thirty miles an hour at the time of the collision and that it had run some distance past Tenth street before it finally came to a stop. Several people who lived in the houses on Fifth avenue immediately west of Tenth street testified as to what they saw of the accident, and two of them testified that the car did not come to a stop after the collision until it ran 125 feet or more. Witnesses for appellant testified that both the appellant and Engdahl were thrown some distance onto the pavement and that appellant was picked up unconscious. One witness testified that the motorcycle was running real slowly. The weight of the evidence in behalf of appellant was to the effect that the collision took place within the limits of Tenth street, on Fifth avenue, just about the west curb line of Tenth street.

A witness for appellee who was riding on the interurban car and saw the accident, testified that he saw the motorcycle when the interurban car was a little ways from the

crossing; that the motorcycle was about 150 feet north of the north crossing of the intersection of Fifth avenue and Tenth street when he first saw it and that it was going fast; that the driver of the motorcycle was talking to the man sitting in the side-car, and that there was no change in the speed of the motorcycle while he saw it. Another witness familiar with the driving and management of motorcycles testified that a motorcycle of the make Swanlund was riding on, going ten miles an hour, can be stopped in about five feet, and can turn, when driven at that speed, in about a fourteen-foot space. Other witnesses on the car testified that the collision took place immediately after they saw the motorcycle coming towards the car; that they could not estimate the speed of the motorcycle. Witnesses for appellee also testified that the bell on the interurban car was ringing for some little time before the accident and that the interurban car was traveling at the rate of twelve miles an hour. There is testimony, also, on the part of appellee as to the distance that a person standing on the interurban line at Tenth street could see east on Fifth avenue, some placing it at about 500 or 600 feet, although it appears that limbs hanging down from the trees in Fifth avenue somewhat obstruct the view down that street. Otto J. Dolan, the motorman of the interurban car, testified that he had been in the employ of appellee for nine years, six years as a motorman, four years of which time he had been driving an interurban car on the Belvidere line; that he did not see the motorcycle until it was right in front of him; that after the accident he examined the tracks of the motorcycle and found that it turned about five or eight feet west and then south, but that the tracks did not indicate that the wheels of the motorcycle had crossed the north rail of the street car track before the collision.

The record shows, without contradiction, that the accident happened about 6:40 in the morning, about three and three-fourths miles from where the appellant and Engdahl

worked, at Camp Grant, and they were planning to reach work at seven o'clock, and appellant argues that they had about twenty minutes to drive the three and three-fourths miles in order to be ready to work at seven o'clock and that they had ample time to reach Camp Grant without driving rapidly. It is the theory of appellee that appellant rode with the owner of the motorcycle at a rapid rate of speed at the time they were crossing Fifth avenue without any protest on his part to the driver of the car, and without himself or the driver doing anything to show that they were in the exercise of due care and diligence; that the evidence shows that neither of them could have looked carefully to see the approach of the interurban car until just before the collision, and that the evidence fully justified the jury and trial court, as well as the Appellate Court, in finding that Engdahl and appellant were guilty of contributory negligence in causing the collision. It is manifest from the record that there is evidence in support of appellant's theory that the depression in Fifth avenue east of Tenth street and the limbs of the trees hanging down tended to hide the view in looking down that street. Appellant contends, also, that the interurban car was traveling at the rate of thirty miles an hour, in violation of the city ordinance, and that the motorman was negligent in not seeing the approach of the motorcycle until his car was within a few feet of the cycle, there being testimony on the part of appellee that one of the witnesses riding on the interurban car saw the motorcycle when it was 150 feet north of the intersection of the two streets, and it is contended that if the motorman had been attentive he could have seen the approaching motorcycle in time to have brought his car under control before the collision. Without discussing at greater length the evidence in the record, it is obvious that the evidence as to the cause of the accident is of such a nature that while it was a question for the jury as to who was negligent in causing the accident, the instructions to the jury and all the rulings on the

evidence should have been accurate in order not to mislead the jury in reaching a correct verdict.

It is argued by appellant that the trial court committed error in giving and refusing instructions. It is particularly insisted that the court erred in giving instruction 3 for appellee. That instruction reads:

"The jury are instructed that the law does not require or exact of an interurban railway company that its servants and employees shall at all times, when running cars, be on guard against injuries to persons which are not reasonably to be expected, nor are they required to be on guard against unusual or extraordinary occurrences or conduct on the part of others, nor to run and operate their cars with such a degree of care and caution as would prevent the practical operation of the company's business."

This instruction assumes that the running of a motorcycle along Tenth street across Fifth avenue was an unusual or extraordinary occurrence. Without question it was misleading in so stating. This was an ordinary public crossing in a busy portion of the city of Rockford, where the employees who controlled interurban cars would naturally expect that at any hour during the day either foot passengers or motorcycles or other vehicles would be crossing Fifth avenue at Tenth street. There could be nothing unusual or extraordinary about vehicles crossing Fifth avenue at that point. The wording of the instruction might tend to lead the jury to believe, on the facts shown here, that the crossing of the motorcycle at this point on the morning in question was such an unusual or extraordinary occasion that the motorman of the interurban car might be justified in not looking for such an occurrence when the interurban car was 100 feet or more from the crossing. It is clear from the record that if the motorman had looked when he was 100 feet from the center of the intersection of Tenth street and Fifth avenue he could have seen the motorcycle approaching, and the collision did not take place until the

interurban car was nearly, if not entirely, across Tenth street. It must be held that this instruction given by the court for appellee was seriously misleading on the vital points of the case, particularly as to whether or not appellee's employees were guilty of negligence in causing the collision.

We think instruction 4 given for appellee was also misleading and erroneous in being so worded that it might lead the jury to believe that the trial court thought that the accident was caused entirely by the negligence of the driver of the motorcycle or the combined negligence of the driver and appellant. We think it is also subject to the criticism that the jury might be led to believe that the negligence of the driver of the motorcycle would necessarily be imputed to appellant. While appellant was liable for his own negligence he was not necessarily liable, under the law, for the negligence, if any, of the driver of the motorcycle. (*Grifenhan* v. *Chicago Railways Co.* 299 Ill. 590; *Pienta* v. *Chicago City Railway Co.* 284 id. 246.) The negligence of the driver in sole charge of a vehicle cannot necessarily be imputed to a passenger in the vehicle. A passenger in a vehicle, if he is caring for his own interests and safety, should, when he learns of a threatened accident and has an opportunity to avoid it, warn the driver of the vehicle. On this record we cannot hold appellant necessarily responsible for the negligence of the driver of the motorcycle, as implied in this instruction. It was error to give instruction 4 for appellee.

The giving and refusing of several other instructions are criticised by counsel for the appellant. We have examined them all, but do not consider that any reversible error was committed by the trial court with reference to the same.

It is further insisted by appellant that the court erred in limiting too strictly the examination of Engdahl, the driver of the motorcycle. The trial court refused to permit him to be asked whether or not he had a suit pending against

the interurban company for the accident in question. It would appear from the record and the briefs before us that Engdahl was injured, although apparently not as seriously as appellant, by the collision, and that he brought an action against the interurban company in which he had been defeated and that he had no suit pending against the interurban company at the time of this hearing, and it is urged by appellant that whether or not he had a suit pending, it would tend to affect his credibility as a witness. We are of the opinion that he should have been permitted to answer this question.

It is also urged that the witness Kraker, who testified for appellant, was not permitted to answer certain questions asked by counsel for appellant on cross-examination. We do not think any reversible error was committed by the court in that ruling.

For the error in giving the instructions for appellee in question, in our judgment the appellant should be permitted to present his cause to another jury under correct rulings as to the law.

The judgments of the Appellate and trial courts will be reversed and the cause remanded to the circuit court for further proceedings in harmony with the views herein expressed.

*Reversed and remanded.*

Mr. JUSTICE CARTWRIGHT, dissenting:

Instruction 3 was a correct statement of the law, sustained by all authority and never questioned. It was abstract in form, and the criticism of instructions of that character has always been that they do not contain any hypothesis of fact, and, being merely rules of law, are not applied to the facts of the case. The instruction did not assume the existence of any fact.

Instruction 4 required that the jury should believe from the evidence the facts stated in it, and if they found from

the evidence that the sole cause of the accident was negligence of the driver of the motorcycle, there was no negligence of the motorman and no liability. The instruction holding the plaintiff responsible for his own negligence was correct, and there was no implication that he was responsible for negligence of the driver.

Mr. CHIEF JUSTICE THOMPSON, also dissenting.