People of the State of Illinois, Plaintiff-Appellee,
v. William Jinkins, Defendant-Appellant.

Gen. No. 66–50.

Second District.

April 13, 1967.

Rehearing denied May 8, 1967.

Kenneth F. Miles and Ernest R. Akemann, of Elgin, for appellant.

William R. Ketcham, State's Attorney, of Geneva, and W. Ben Morgan, Assistant State's Attorney, of Elgin, for appellee.

MR. JUSTICE BURT delivered the opinion of the court.

William Jinkins, the defendant, was tried by a jury in the Circuit Court for the 16th Judicial Circuit, Kane County, for armed robbery. The jury returned a verdict of guilty and judgment was entered against him on March 8, 1965, after motions for new trial and for judgment notwithstanding the verdict were denied. The court sentenced the defendant to the penitentiary for a term of 7–21 years. Leave was granted defendant to appeal to this court.

The Fox Valley Country Club, just south of Batavia, Illinois, on Illinois State Route 25 in Kane County, was

robbed at about 1:00 a. m. on August 27, 1964, by four armed robbers, three of whom entered the country club and participated in the robbery while the fourth waited a short distance away in a car. The getaway was made in two cars. The manager, J. D. Whittle, his wife, and several customers were present at the time. The defendant was arrested for the crime about two weeks later.

Defendant relies upon four grounds of alleged error in his petition for leave to appeal.

First, he complains that the verdict of the jury was contrary to the law and to the manifest weight of the evidence, and that the defendant was not proven guilty beyond all reasonable doubt. The principal defense was alibi. The defendant and three witnesses, Edna Doris Cole, J. C. Fields and Billie Stockton Myrick who were employees, or acquaintances of the defendant, testified that the defendant was in his tavern in Chicago during the hours when the robbery was taking place.

The abstract does not include the substance of the testimony produced by the State to identify the defendant and his participation in the robbery. The record, however, shows that J. D. Whittle, the manager of the country club, identified the defendant as one of the men who held him up at gunpoint and made him open the safe, get the money, and then lie down on the floor until the customers were searched and robbed and the getaway complete. He testified that he saw the defendant at a distance of 12 feet and face to face. He saw the defendant close up three times. He also quoted the defendant as saying to the witness as the witness was getting up off the floor where he had been compelled to lie, "If you try anything funny, I'll shoot your wife." In addition, the witness Henry Mayberry, one of the participants who pleaded guilty, testified in detail as to the plans for the robbery and the acts of the robbers

while committing the crime. Mayberry had worked for the defendant in the defendant's tavern for about two weeks as bartender prior to the crime. The witness rode with Jinkins in the witness's car and followed the other participants who were driving in a Ford to the scene. The witness described his car, the road taken to the scene of the crime and the clothing worn by the participants. Frank Francis Robinson testified he followed defendant's car from the scene and saw defendant in the back seat. He identified defendant at a police show-up also.

■ The jury heard and saw the witnesses and had an opportunity to consider the weight of both the State's and the defendant's evidence. This court cannot say that the verdict was contrary to the manifest weight of the evidence.

As to the second complaint that the indictment was insufficient because the date of the offense was blurred and unreadable, the indictment is not abstracted, but the record is clear on the date as the 27th of August 1964.

The third complaint of the defendant is on the admission and exclusion of evidence. The defendant objects that he was not permitted to introduce evidence of his good character and reputation, citing People v. Lewis, 25 Ill2d 442, 185 NE2d 254 (1957) ; and People v. Guzzardo, 4 Ill App2d 355, 124 NE2d 39 (1955).

The Lewis case, in which the charge was rape, held that the defendant in a criminal case can make proof of such previous good character as is inconsistent with commission of the crime with which he is charged, and that this proof is made by showing his general reputation for the specific trait of character involved, to suggest the inference that the accused acted consistently with his character.

The Guzzardo case, above cited, was a conviction for violation of the statute relating to unlawful assembly and the court held that the defendant's reputation for

154

being trustful, law abiding, and peaceful citizen could be shown.

As to the defendant's reputation, four witnesses were produced by defendant. Karl Laskowski, the defendant's barber, testified as to his customary haircut style, but also was asked the following questions and gave the following answers:

"Mr. Juergensmeyer: Do you know the defendant's reputation in the neighborhood?

"Witness: How do you mean?

"Mr. Juergensmeyer: Do you know of his reputation in the neighborhood?

"Witness: As best I could as a customer of mine, and as far as his private life, I don't know anything about that.

"Mr. Juergensmeyer: What was his reputation in the neighborhood, to your knowledge?

"Mr. Ketcham: I'll object Your Honor. He hasn't laid a foundation.

"The Court: Sustained.

"Mr. Juergensmeyer: How often did you say that you have seen the defendant during this period—the month of August, 1964?

"Witness: A couple of times a week, more than once every week I would see him. Maybe I would see him one day and the next day I would not, but I would see him the next day after that.

"Mr. Juergensmeyer: To your knowledge, had he ever associated with known criminals in the neighborhood?

"Witness: Not that I know of.

"Mr. Juergensmeyer: Where you acquainted with his general reputation in the community, and his reputation for truth and veracity?

"Mr. Ketcham: I'll object. That's two questions.

"The Court: Sustained.

"Mr. Juergensmeyer: Were you acquainted with his general reputation in the community?

"Witness: Yes.

"Mr. Juergensmeyer: Was it good?

"Mr. Ketcham: I'll object Your Honor. I don't think there is an adequate foundation.

"The Court: Sustained."

■ No proper foundation was laid for these questions and they were too generalized, since they did not call for any appropriate trait of character related to robbery.

■ Edna Doris Cole was asked if she was acquainted with the defendant's reputation in the community for truth and veracity. Objection was properly sustained to this question as it was irrelevant and had no bearing on any trait of character involved in the crime of armed robbery, People v. Kendall, 357 Ill 448, 456, 457, 192 NE 378 (1934).

■ The witness J. C. Fields was asked whether he was familiar with the defendant's reputation for peacefulness in the community. Objection was properly sustained. The case of People v. Redola, 300 Ill 392, 133 NE 292 (1921), a larceny case, holds that evidence of defendant's reputation as a peaceable citizen is not relevant in a trial for larceny. The court stated that the inquiry must relate to the defendant's character with respect to a crime of the nature involved and that evidence of general reputation for a trait of character not

involved in the crime charged is not admissible. The court held the characterization as "peaceable" had no relation to the crime of larceny. The People v. Celmars, 332 Ill 113, 117–118, 163 NE 421 (1928). Cleary, Handbook of Illinois Evidence, 2nd Edition, 1963, pages 212, 213.

Complaint was also made that the testimony of the witness Benjamin B. Smith was excluded. The record also shows he was asked about defendant's reputation for peacefulness (with no foundation being laid) and as to his association with criminals. This evidence was properly excluded.

■ As stated in People v. Guzzardo, 4 Ill App2d 355, 124 NE2d 39 (1955), page 371 . . . "it is not the purpose of a reviewing court to determine whether the record is perfect, but to determine whether the defendant has had a fair trial under the law, whether the conviction is based upon competent evidence establishing guilt beyond a reasonable doubt, and whether there was any such error as might be prejudicial to the defendant's rights: . . . (Citing cases.)"

■ "Good character and reputation evidence, where such is in issue, is, of course, entirely proper and permissible to be considered as a part of the defendant's case, along with all the other evidence in the case, though it is not a defense, as such, to a crime; it may, in a particular case, be sufficient to raise a reasonable doubt as to guilt; its sufficiency and weight, like that of all other evidence, however, is a question of fact for determination by the trier of the facts; if guilt is clearly established, good character or reputation avails nothing; People v. Munday (1917), 280 Ill 32; People v. Hrdlicka et al. (1931), 344 Ill 211; People v. Klemann (1943), 383 Ill 236; People v. Cozzie (1947), 397 Ill 620; People v. Bridgewater (1938), 369 Ill 633."

■ Even if these rulings on reputation evidence were incorrect, yet the competent evidence so over-

whelmingly and thoroughly proves defendant's guilt beyond a reasonable doubt that we would not be justified in setting aside the conviction. The People v. Reeves, 360 Ill 55, 195 NE 443 (1935), on this ground only.

██ Objection was also made to the introduction by the People of photographs of the defendant taken about three weeks after the crime was committed. It is claimed that these photographs tended to show the defendant's hair long. The length of the defendant's hair at the time of the occurrence was at issue. The People's witness Robinson asserted that the defendant had a cowlick and defense witness Laskowski asserted that his hair was short. The state pointed out, however, that the defendant was present in the court at all times during the trial for the jury to see and if his appearance did not match the photograph, the jury could see that too. He was also identified by the witnesses Mayberry, Loturco, Whittle and Frank Francis Robinson.

██ Finally, defendant complains that errors were made in the refusal to give three of defendant's instructions. There were 18 instructions given in all and only four were abstracted.

As was stated in Pantlen v. Gottschalk, 21 Ill App 2d 163, 157 NE2d 548 (1959):

> "This point cannot be considered by this court since the defendant failed to abstract all of the instructions given in the cause. Our courts have uniformly held that error cannot be predicated upon the giving, refusal or modification of instructions unless all the instructions are set out in the abstract, for the reason that there may have been other instructions given which cured the errors complained of. Reavely v. Harris, 239 Ill 526; Thompson v. People, 192 Ill 79; Siegel, Cooper & Co. v. Norton, 209 Ill 201; Randall Dairy Co. v. Pevely Dairy Co., 291 Ill App 380."

158

Other cases in point are: The People v. Todaro, 14 Ill2d 594, 153 NE2d 563 (1958); The People v. Husband, 4 Ill2d 451, 123 NE2d 315 (1954); People v. Gardner, 61 Ill App2d 326, 210 NE2d 545 (1965); People v. Robinson, 27 Ill2d 289, 189 NE2d 243 (1963).

Review of this record indicates that the jury was justified in finding this defendant guilty beyond all reasonable doubt and the defendant had a fair trial. The judgment of the Circuit Court of Kane County is, therefore, affirmed.

Judgment affirmed.

ABRAHAMSON and MORAN, JJ., concur.