THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
ROBERT T. CROSSER, Defendant-Appellant.

Second District   No. 82—244

Opinion filed August 9, 1983.

William H. Snively, of Rockford, for appellant.

Daniel Doyle, State's Attorney, of Rockford (Phyllis J. Perko and Martin P. Moltz, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE HOPF delivered the opinion of the court:

After a jury trial the defendant, Robert Crosser, was convicted of the offense of aggravated battery (Ill. Rev. Stat. 1979, ch. 38, par. 12—4(b)(1)). He was sentenced to a 30-month term of probation with the first 60 days to be served in the Winnebago County work-release program. The court also fined him $250 plus costs.

The defendant appeals and presents four assignments of error: (1) that the trial court improperly refused to give the jury the instructions on intoxication which the defendant tendered; (2) that the trial court erred when it prevented defense counsel from cross-examining the complaining witness regarding his pending civil lawsuit against the accused for damages arising from the defendant's criminal conduct in this cause; (3) that the court below committed error when it

refused a defense instruction concerning the jury's consideration of evidence of the defendant's reputation for truth and veracity; and (4) that the court improperly sentenced the defendant to serve 60 days in the work-release program as a condition of probation.

The events leading up to the charge in question began on Thanksgiving Day, November 27, 1980. At that time, defendant was married to Georgia Crosser for the second time; their first marriage had ended in divorce. Two or three months prior to November 1980, the defendant and his wife were experiencing marital problems which led to Georgia's filing a petition for dissolution of marriage. She secured a court order barring defendant from entering the marital home in Rockford. However, Georgia did not always enforce the court injunction and allowed defendant to return to the house for the three days immediately prior to Thanksgiving Day. He left the home at 10 o'clock on Thanksgiving morning to visit his father-in-law.

The defendant visited his father-in-law and had a few beers there. At noon Crosser went downtown with a friend and visited a few bars. He drank beer all day until approximately 9 p.m. During that period he consumed approximately 15 to 18 beers. At 9 o'clock he summoned a cab to take him to his wife's home.

Meanwhile, on Thanksgiving Day, Billy Keen, accompanied by two friends, went to the home of Georgia Crosser. Two girls were also present at Georgia's residence, and they all ate, danced and drank during the afternoon. Keen did not inquire of anyone whether Georgia was married, but was under the impression that she was divorced.

At approximately 10 p.m. Keen and Georgia were lying on the couch "making out" when the defendant, after hollering and beating on the back door without response, entered the house after knocking the glass out of the rear door. When Crosser saw his wife and Keen on the couch, he threw a bottle at Keen which hit him in the head. The two men struggled until Crosser fell against the television set, split his head open, and lost consciousness for one-half to three-quarters of an hour. He was taken by ambulance to the hospital where he refused medical attention.

After the defendant was taken to the hospital, Keen and Georgia Crosser retired to the bedroom around midnight where, after engaging in sexual intercourse, they went to sleep. At approximately 2:30 the following morning, a friend of the defendant picked Crosser up at the emergency room and transported him to Georgia's residence. Defendant entered the kitchen and from that vantage point observed Keen and Georgia lying on the bed. Crosser picked up a hatchet which was located on the kitchen table and proceeded to the bedroom.

He hollered "What the hell is going on here," but neither his wife nor Keen moved; the defendant then hit Keen in the head with the hatchet. Crosser left the house and went to the home of Crosser's father-in-law at 3:30 a.m.

At approximately 5 or 6 a.m. the ringing of the telephone awakened Billy Keen, who was still asleep in bed. He was not aware that he had been injured, for he was still drunk. When he looked into the kitchen, he observed two police officers who informed him that he needed hospitalization because his head was split open. Subsequently, when he looked in the mirror, he saw a gash in his forehead, which was bleeding. He underwent surgery, was hospitalized for five days, and was still taking medication at the time of trial.

The following Monday the defendant gave the police a statement which was consistent with the substance of his testimony at trial as well as that which the victim proferred. In that statement he admitted that he had struck Keen in the head with the hatchet, but stated that he was "half drunk and mad" at the time he entered the house on Friday morning. That statement was read to the jury.

The defendant presented two character witnesses in his behalf who stated that the defendant had a good reputation for truth and veracity and that his reputation for being a peaceful and law-abiding person was also good.

Thereafter, the jury found the defendant guilty of aggravated battery. Judgment was entered on the verdict and defendant was sentenced to 30 months probation conditioned upon his serving the first 60 days in the county jail work-release program; in addition, the court imposed a fine of $250 plus court costs.

Defendant first contends that the trial court improperly refused to give the jury two tendered instructions on intoxication. One was an issues instruction on the defense of voluntary intoxication, which is contained in Illinois Pattern Jury Instruction (IPI), Criminal, No. 25.02 (1968). The other was an instruction on voluntary intoxication as set forth in IPI Criminal No. 24.02 (1968). Defendant maintains that he presented sufficient evidence of his inebriated condition to raise the defense of voluntary intoxication and to require that the court give these instructions at his request. We disagree.

■ ■ Aggravated battery is a specific intent crime because it contains, as an element of the offense, the requirement that the criminal conduct must be performed knowingly or intentionally. (See Ill. Rev. Stat. 1979, ch. 38, par. 12—4(a); *People v. Harkey* (1979), 69 Ill. App. 3d 94, 96, 386 N.E.2d 1151; *People v. Jones* (1978), 67 Ill. App. 3d 477, 478, 384 N.E.2d 523.) Voluntary intoxication is a defense to a

specific intent offense, such as the present one, if the condition of intoxication negates or makes impossible the existence of the mental state which is an element of the crime. (Ill. Rev. Stat. 1979, ch. 38, par. 6—3(a); see *People v. Rosas* (1981), 102 Ill. App. 3d 113, 429 N.E.2d 898; *People v. Fuller* (1980), 91 Ill. App. 3d 922, 927, 415 N.E.2d 502; *People v. Jones*.) In other words, the degree of intoxication which will absolve the defendant of responsibility for his criminal conduct must be so extreme that it suspended entirely the power of reason (*People v. Moon* (1982), 107 Ill. App. 3d 568, 572, 437 N.E.2d 823; *People v. Nichols* (1981), 96 Ill. App. 3d 354, 359, 420 N.E.2d 1166), or rendered the defendant wholly incapable of forming the requisite intent to commit the crime in question. (*People v. O'Shaughnessy* (1981), 102 Ill. App. 3d 966, 971, 430 N.E.2d 325.) The mere fact that the defendant was drunk or intoxicated does not constitute a defense of intoxication.

In the case at bar, the defendant testified that he drank 15 to 18 beers prior to 9 p.m. on November 27, 1980. In addition, his statement to the police contained the remark that he was "half drunk" when he returned to his wife's home early in the morning on November 28. There was no evidence that the defendant drank after 9 p.m. and he did not testify he was drunk at the time he committed the aggravated battery. The evidence established that defendant knew what he was doing when he picked up a hatchet, and, rather than suffering from a lapse of memory, he was able to tell the police officers a few days later exactly what happened on the morning in question.

■ Based on the totality of these facts, the evidence does not indicate that the defendant was intoxicated at the time of the offense. However, even assuming for the sake of argument that he was inebriated, his drunken or intoxicated condition, by itself, was insufficient to justify the giving of the proposed instructions on intoxication. No evidence was introduced to establish that the defendant's mental processes were so impaired that he was incapable of reasoning or of forming the requisite mental intent to commit the offense of aggravated battery. To the contrary, defendant's own testimony and his statements to the police indicate that he engaged in knowing and purposeful conduct, and that his ability to recall the events of the evening was not impaired. See *People v. Moon* (1982), 107 Ill. App. 3d 568, 572, 437 N.E.2d 823; *People v. Nichols* (1981), 96 Ill. App. 3d 354, 359, 420 N.E.2d 1166.

Where, as in the case at bar, the evidence concerning the defendant's drinking would not have justified a jury's determination that the defendant was so intoxicated that he lacked totally the requisite men-

tal state or the power of reason, no error will be found in the trial court's refusal to give the instructions on intoxication which the defendant proffered. (*People v. Moon* (1982), 107 Ill. App. 3d 568, 572, 437 N.E.2d 823; *People v. Williams* (1973), 14 Ill. App. 3d 789, 794, 303 N.E.2d 585; *People v. Reynolds* (1963), 27 Ill. 2d 523, 526, 190 N.E.2d 301.) Thus, the trial court acted correctly in refusing defendant's tendered instructions.

The defendant's second contention is that the trial court impermissibly restricted his cross-examination of the complaining witness regarding Keen's pending civil lawsuit against the accused for damages arising from defendant's criminal conduct in this cause. The defendant maintains that he should have been able to elicit that testimony to establish the witness' potential bias. Defendant's offer of proof on this matter demonstrated that Keen had in fact filed a civil action against the defendant in which he sought an award of monetary damages for the injuries he sustained at the hands of Crosser. We agree that this evidence should have been admitted to establish Keen's bias towards defendant.

The scope of cross-examination is generally within the trial court's discretion; however, the widest latitude should be allowed the defendant for the purpose of establishing bias, motive, or interest on the part of a witness. (*People v. Foley* (1982), 109 Ill. App. 3d 1010, 1014, 441 N.E.2d 655; *People v. Pizzi* (1981), 94 Ill. App. 3d 415, 420, 418 N.E.2d 1024.) Cross-examination for this type of impeachment is a matter of right subject only to the trial court's broad discretion to preclude repetitive or unduly harassing interrogation and to confine the cross-examination to a proper subject matter. (*People v. Foley; People v. Phillips* (1981), 95 Ill. App. 3d 1013, 1020, 420 N.E.2d 837.) However, because the evidence must potentially give rise to the inference that the witness has something to gain or lose by his testimony, the evidence of bias, interest, or motive must not be speculative, remote, or uncertain. *People v. Foley; People v. Phillips.*

Bias, in the form of hostility toward a party, may be shown by the fact that the witness has a lawsuit pending against that party. (*Sullivan v. United States* (D.C. App. 1979), 404 A.2d 153, 160; McCormick, Evidence sec. 40, at 79 (2d ed. 1972); Annot., 98 A.L.R.3d 1060, 1063 (1980).) Where a witness in a criminal prosecution has a civil action pending against the accused, the witness cannot be said to be without an interest which might affect his credibility. (*People v. Peltz* (1908), 143 Ill. App. 181, 182; 98 C.J.S. *Witnesses* sec. 546, at 488 (1957); see also *Feigl v. Terminal R.R. Association* (1975), 30 Ill. App. 3d 55, 61, 332 N.E.2d 416, and *Swanlund v. Rockford & Inter-*

*urban Ry. Co.* (1922), 305 Ill. 339, 346-47, 137 N.E. 206, holding similarly in the context of civil proceedings.) In Illinois, the trial court properly exercises its discretion when it precludes the cross-examination of a prosecution witness concerning a civil lawsuit arising from the incident in question where there is no indication that any civil action was actually filed or contemplated. (*People v. Denby* (1981), 102 Ill. App. 3d 1141, 1149-50, 430 N.E.2d 507; *People v. Bradford* (1979), 78 Ill. App. 3d 869, 877, 397 N.E.2d 863.) Similarly, the trial court also may restrict cross-examination of the complaining witness regarding the amount of damages he or she is seeking in a pending civil lawsuit against the defendant arising from the same incident. (*People v. Jones* (1979), 70 Ill. App. 3d 338, 346, 387 N.E.2d 1010.) In *Jones*, the court permitted cross-examination of the complainant concerning a related civil case filed against the defendant but refused to allow questioning on the amount of damages sought.

On the basis of these authorities, we conclude that the court below erred in refusing to allow defendant to question Keen during cross-examination regarding the civil action which Keen had filed against Crosser. However, we do not believe this error constituted reversible error. It is well established that an error committed in restricting the scope of cross-examination will rise to the level of reversible error only if the defendant manifestly suffered prejudice as a result of the limitation. (*People v. Myers* (1980), 92 Ill. App. 3d 229, 236, 415 N.E.2d 1108; *People v. Larson* (1980), 82 Ill. App. 3d 129, 143, 402 N.E.2d 732; *People v. Hubbard* (1973), 55 Ill. 2d 142, 151, 302 N.E.2d 609.) Here, it was the attack itself which generated whatever ill-will, interest, or bias the complainant might have harbored against the defendant. Because defense counsel was not prohibited from cross-examining Keen regarding the events leading up to the attack or the injuries the witness had suffered, no prejudicial error is manifest. (See *Sullivan v. United States* (D.C. App. 1979), 404 A.2d 153, 161; *Commonwealth v. Colacino* (1926), 89 Pa. Super. Ct. 269, cited in Annot., 98 A.L.R.3d 1060, 1073 (1980).) Furthermore, the error in rejecting the evidence in question was inconsequential given the fact that any bias on the part of the prosecuting witness was sufficiently manifested by his testimony and demeanor as a witness. See *Oldham v. Commonwealth* (1910), 136 Ky. 789, 794, 125 S.W. 242, 244.

■ Relying upon *People v. Hrdlicka* (1931), 344 Ill. 211, 176 N.E. 308, defendant next contends that the trial court improperly refused his tendered instruction stating that evidence of defendant's good reputation for truth and veracity must be considered along with all the

other evidence in the case. See IPI Criminal No. 3.16 (1968).

*People v. Hrdlicka* (1931), 344 Ill. 211, 220-21, 176 N.E. 308, is distinguishable and is of little support for what confronts us here. That case dealt with an instruction as to general reputation for honesty and integrity, and the court ruled that the trial court did not err when it refused an improper instruction.

It is generally held that evidence of a person's good reputation or character is entirely proper and should be considered as part of defendant's case where it has been placed in issue. The inquiry must relate to the defendant's character with respect to the nature of the crime involved. Evidence of general reputation for a character not involved in the crime charged is not admissible. (*People v. Jinkins* (1967), 82 Ill. App. 2d 150, 156-57, 225 N.E.2d 657.) In the case before us truth and veracity is simply not involved as an issue in the crime of aggravated battery. *People v. Griffith* (1978), 56 Ill. App. 3d 747, 756-57, 372 N.E.2d 404.

■ The trial judge refused to give the proffered instruction because the renditions of the incident in question which both Keen and Crosser related at trial were consistent with each other and not conflicting. The court's reasoning might possibly be in error, but as the defendant's reputation for truth and veracity has not been properly called into question or placed in issue either by his impeachment or as an issue of the crime as charged, the refusal to grant the proffered instruction is correct. (*People v. George* (1978), 67 Ill. App. 3d 102, 108, 384 N.E.2d 377, *cert. denied* (1979), 444 U.S. 925, 62 L. Ed. 2d 181, 100 S. Ct. 262; *People v. Griffith* (1978), 56 Ill. App. 3d 747, 756-57, 372 N.E.2d 404.) Further, the evidence of defendant's good reputation avails him nothing since his guilt in this case was clearly established. *People v. Thornton* (1978), 61 Ill. App. 3d 530, 534, 378 N.E.2d 198; *People v. Griffith; People v. Jinkins* (1967), 82 Ill. App. 2d 150, 156-57, 225 N.E.2d 657.

■ The defendant's last assertion is that his good conduct since his arrest militated strongly against the trial court's imposition of jail time as a condition of probation. In effect, the defendant maintains that the court below abused its discretion when it sentenced him to serve 60 days in the county work-release program as a condition of probation.

The law is well established that all penalties must be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship. (Ill. Const. 1970, art. I, sec. 11; Ill. Rev. Stat. 1979, ch. 38, par. 1001—1—2.) Thus, a sentence will not be disturbed on review when it reflects both the se-

riousness of the offense and gives adequate consideration to the rehabilitative potential of the defendant. (*People v. Carlson* (1980), 79 Ill. 2d 564, 587, 404 N.E.2d 233; *People v. Murphy* (1978), 72 Ill. 2d 421, 439, 381 N.E.2d 677.) Also, rehabilitation and the seriousness of the offense are to be accorded equal weight in fixing punishment, and the prime responsibility for striking the proper balance between the two factors rests with the trial court. *People v. Waud* (1977), 69 Ill. 2d 588, 596, 373 N.E.2d 1.

Although reviewing courts, in appropriate circumstances, may reduce or modify sentences pursuant to Supreme Court Rule 615(b)(4) (87 Ill. 2d R. 615(b)(4)), our supreme court has firmly established and repeatedly emphasized that the trial court is normally the proper forum in which a suitable sentence is to be determined. The responsibility for imposing sentence is a matter within the trial court's discretion; thus, that court's decision with respect to sentencing is accorded great deference and weight and will not be disturbed on review absent an abuse of discretion. (*People v. Willingham* (1982), 89 Ill. 2d 352, 364, 432 N.E.2d 861; *People v. La Pointe* (1981), 88 Ill. 2d 482, 492-93, 431 N.E.2d 344; *People v. Cox* (1980), 82 Ill. 2d 268, 279-80, 412 N.E.2d 541; *People v. Perruquet* (1977), 68 Ill. 2d 149, 153, 368 N.E.2d 882.) It is not the function of a court of review to serve as a sentencing court. Therefore, this court may not substitute its judgment for that of the trial court merely because it might have imposed a different sentence had that function been delegated to it. (*People v. Waud* (1977), 69 Ill. 2d 588, 596, 373 N.E.2d 1; *People v. Perruquet* (1977), 68 Ill. 2d 149, 156, 368 N.E.2d 882.) The task of weighing the various aggravating and mitigating factors is the function of the trial court. *People v. Jackson* (1981), 97 Ill. App. 3d 928, 929, 424 N.E.2d 83.

Although the defendant since his release on bond has completed a program for the treatment of alcoholism and has refrained from drinking for over a year the record also reveals other matters which weigh strongly in favor of the sentence the trial court imposed here. The record demonstrates that the defendant has a history of recent criminal conduct, including violence, a fact which the trial court noted when fixing sentence. The court also stressed that the defendant's conduct in this case was most serious, for he hit the sleeping victim in the head with a hatchet, causing a depressed skull fracture that necessitated surgery. Recognizing that the defendant had a good job and work record, the court emphasized that, while he was an appropriate candidate for probation, he would still have to serve some time in the county jail given the gravity of his conduct in this case. Based on this

record, we find no abuse of the broad discretion entrusted to the trial court in sentencing matters.

Accordingly, the judgment of the circuit court of Winnebago County is affirmed.

Affirmed.

SEIDENFELD, P.J., and LINDBERG, J., concur.