## Franklin v. Commonwealth.

(Decided December 14, 1923.

### Appeal from Fulton Circuit Court.

1. Criminal Law—Abuse and Blasphemy, Directed Toward One Under Investigation, by Officers, Not Countenanced.—Neither the law nor decency will countenance blasphemy or abuse directed against one under investigation by officers of law, or others whose duty it is to enforce it by proper and respectable methods.

2. Criminal Law—Failure to Re-read Indictment After New Juror Called Not Prejudicial.—Where, after jury was sworn, it was dis-

covered that one remembered that he had been on the grand jury, and he was excused with the consent of both the Commonwealth and accused, and another member of the jury panel was called to replace him, the fact that the indictment was not reread was not reversible error, where the new member of the jury was seated near the box when the indictment was first read, and heard and fully understood it, under Criminal Code of Practice, section 219.

3. Criminal Law—Admissions made in Presence of Officers Held Not Inadmissible Under the Sweating Act.—Where officers approached defendant, subsequently charged with receiving stolen goods, and asked him to face one in jail who was arrested for stealing the goods, and defendant went willingly with the officers, statements made by him at the jail in the presence of the officers held not inadmissible, under the Sweating Act (Ky. Stats., section 1649b-1); it appearing that he was released and allowed to return to his home and was not in fact arrested until several weeks later, and all the statements being made by him voluntarily, and apparently of his own free will and accord.

4. Receiving Stolen Goods—Defendant should be Allowed to Prove that he Relied on Good Reputation of Seller.—Defendant, in prosecution for receiving stolen goods, should be allowed to prove conclusively that he relied, and had the right to depend, on the good reputation of him who tendered the articles for sale, and from whom he purchased them.

5. Criminal Law—When Conviction Reversed for Error.—A mere technicality in the trial of a case, of a nature not prejudicial to the cause of the accused, is not ground for reversal; but where a serious wrong occurs by admission of incompetent evidence, or denial of competent evidence, where a grave injury has been done the interests of accused, a reversal should follow.

6. Criminal Law—Exclusion of Evidence of Good Reputation of Thief Prejudicial, in Prosecution for Receiving Stolen Goods.—In a prosecution for receiving stolen goods, it was prejudicial and reversible error not to permit well-known citizens to testify that they had known the thief for twenty years, and that his general reputation for probity, morality, and good order had, up to the time of his arrest, been good.

ED. THOMAS for appellant.

THOS. B. McGREGOR, Attorney General, and LILBURN PHELPS, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE ROBINSON—Reversing.

During the January term, 1923, appellant was indicted by the Fulton county grand jury, charged with knowingly

receiving stolen property, to which indictment his attorney demurred, alleging that it was insufficient and failed to completely cover the charge as denounced by Kentucky Statutes. The court sustained the demurrer and during its May term, 1923, the case was again submitted and an indictment returned. A subsequent demurrer was filed, which being overruled, both sides announced ready, and appellant was convicted, his punishment being fixed at one year in the penitentiary. From this judgment an appeal is prosecuted to this court.

. From the evidence it appears that during November, 1922, a sealed car of the Illinois Central Railroad was entered at Fulton, Kentucky, and two cartons of shoes were extracted therefrom. They were of a consignment of three that had been shipped from Greenville, Tennessee, to the Peters Shoe Company of St. Louis, Missouri. A short time afterwards Jim Crowder, a colored coal cart driver, was arrested, charged with this offense, and made a complete confession of his connection with the affair, claiming that he had used several pairs of the shoes for his children and had then visited the barber shop of appellant, Aaron Franklin, a hitherto highly respected colored man of Fulton; and after selling one pair to him, left two others to be disposed of. Upon the confession of Crowder, two police officers visited the place conducted by appellant and asked him, "Where are those shoes?" In his testimony he claims that he did not at the time realize to what shoes the officers referred, and in response to their query asked the question, "What shoes are you talking about?" and they said, "The shoes you got from Crowder." It is admitted in the evidence that appellant at once said, "Oh, I bought a pair of shoes from him, but I haven't the others," meaning that he had disposed of them. The officers appear to have believed that this statement was a disclaimer on the part of appellant that he had received any other shoes than the one pair purchased, and said to him, "You come with us and face Jim Crowder at the jail and hear what he says." Apparently Franklin went with them very willingly, although he states that he was cursed and abused and otherwise mistreated by these officers, and upon meeting Crowder where he was confined and being accused by him of having had possession of the three pairs of shoes, he freely and frankly admitted the fact and told to whom they had been disposed, further saying, "If I had known that you stole them I would have had nothing to do with you." Crowder

stated that while he did not tell him the shoes were stolen or how or in what manner he became possessed of them, nevertheless Franklin knew or should have known that they were stolen, and said that he had at one time purchased a pair of shoes from Franklin, the latter saying they were "hot," meaning that they were stolen; that further, Franklin had said he would sell the two pairs of shoes left with him to parties residing outside of Fulton with the intention of removing them to a point where discovery of their sale would be lessened. Franklin vehemently denied these allegations and accused Crowder of endeavoring to fasten upon him the stigma of having knowingly received a part of his ill-gotten gains. Appellant further testified that he was cursed and abused by the officers in question in an endeavor to force him to admit the charges alleged by Crowder, which, if true, is inexcusable and without justification, whether under arrest or not, whether guilty or not. Neither the law nor decency will countenance blasphemy or abuse directed toward one under investigation by officers of the law or others whose duty it is to enforce it by proper and respectable methods.

In his motion and grounds for a new trial attorney for appellant cites a number of grounds upon which he bases his contention that he should receive a new trial. The first is: That after the jury was sworn it was discovered that one J. W. Hackett, a member of same, remembered that he had been on the grand jury during the session Franklin was indicted, and upon his statement of these facts he was excused with the consent of both the Commonwealth and the attorney for appellant; and G. B. Cook, a member of the jury panel, was called to replace him; and while the jury was again sworn, the indictment was not re-read, although Cook was seated near the box when the indictment was first read to the former jury before Hackett was excused; and, further, an affidavit is filed by Cook that he heard this indictment read and fully understood it, though appellant contends that the failure to read the indictment after Cook was placed upon the jury was fatal and reversible error, citing section 219 of the Criminal Code:

"(Indictment to be read and plea stated.) The clerk, or Commonwealth's attorney, shall then read to the jury the indictment, and state the defendant's plea."

However, in a matter of this kind the court is not inclined to set aside the verdict of a jury upon a mere tech-

nicality where the rights of appellant have not been substantially or at all jeopardized; and the affidavit of juror Cook expressly states that he had heard the indictment read only a few minutes before he was accepted and understood it fully. And it might be here noted that the alleged failure to read the indictment after Cook's acceptance was not noted or excepted to in any way by appellant or his attorney; and further in Reed v. Commonwealth, 138 Ky. 568, it is said:

"Under Criminal Code of Practice, section 340, providing that a conviction shall be reversed for any error of law appearing on the record when, upon consideration of the whole case, the court is satisfied that the substantial rights of accused have been prejudiced thereby, the converse also being true, if it appears from an examination of the record that the substantial rights of accused had not been prejudiced during the trial, the conviction should not be reversed, and the failure to call upon accused to plead or his failure to plead would not be ground for reversal, where it appears from the record that an issue was in fact formed and tried out before the jury."

And further in Meece v. Commonwealth, 78 Ky. 586, the court says:

"The record fails to show that the plea of not guilty was entered, but it is manifest from the entire record that an issue was made, and the accused had a fair and impartial trial."

In this case appellant, George Meece, was indicted for murder in the Laurel circuit court and upon trial was convicted of manslaughter and sentenced to the state prison for twenty-one years; and one of the grounds relied upon for a new trial was the fact that a plea of "not guilty" had not been entered; nevertheless the court held that throughout the entire trial of the case the jury were thoroughly conversant with the fact that the defendant was relying upon the evidence tending clearly to establish his lack of guilt; and that the omission to enter the plea of "not guilty" could have in no wise changed the result of their deliberation or their belief in his guilt; and that in no way could his rights have been injured or justice thwarted; and this court affirmed the judgment.

Counsel for appellant relies upon the case of Farris v. Commonwealth, 23 Ky. L. Rep. 580, a part of which says:

"The failure of the clerk or the Commonwealth's attorney to read the indictment to the jury during the trial is a reversible error, as section 219, Criminal Code of Practice, is mandatory."

This is doubtless true if unaccompanied by any facts or circumstances calculated to convey to the minds of the jury any or all of the substantial allegations of the indictment, which, however, it can be clearly seen is the contrary in this case. The Farris case is also referred to in Galloway v. Commonwealth, 24 Ky. L. Rep. 92, which is substantially the same as the above.

There were several other grounds cited in the motion and grounds for a new trial which are of minor importance and with which this court need not deal. One of them, however, is that the court grievously erred in not having excluded testimony of the two officers who arrested appellant, claiming immunity for him by the sweating act, section 1649b-1, Kentucky Statutes. We have already referred to this alleged sweating of Franklin by officers Hart and Johnson, and while in no wise approving of it, we do not feel that it comes within the provisions of the act above referred to. We cannot believe that he was under arrest or actually in custody when he agreed to accompany them to face Crowder, after which he was released and allowed to return to his home, and in fact was not arrested until some two or three weeks later. In the meantime he had recovered the two pairs of shoes claimed to have been sold to railroad employes and returned them to the officers. Now the question is, was he under arrest or actually in custody when they questioned him and obtained information relative to the shoes? We scarcely think so, and, upon referring to section 1649b-1 of the statutes, find the following:

"Sweating act; confessions. That what is commonly known as 'sweating' is hereby defined to be the questioning of a person in custody charged with crime in an attempt to obtain information from him concerning his connection with the crime or knowledge thereof, after he has been arrested and in custody, as stated, by plying him with questions or by threats or other wrongful means, extorting from him information to be used against him as testimony upon his trial for such alleged crime."

The point can not well be taken that appellant was under arrest at the time referred to, or that he could be the beneficiary of the provisions of this "sweating act;"

and this is further shown in the case of Commonwealth v. McClanahan, 153 Ky. 412, in which it is said:

"That what is commonly known as 'sweating' is hereby defined to be the questioning of a person in custody charged with crime in an attempt to obtain information from him concerning his connection with crime or knowledge thereof, after he has been arrested and in custody, as stated, by plying him with questions or by threats or other wrongful means, extorting from him information to be used against him as testimony upon his trial for such alleged crime."

Upon the occasion stated, Franklin was not in custody or under arrest, nor was he directly or indirectly charged with the commission of any offense; and further it appears that all the statements made by him were voluntary and apparently of his own free will and accord. In Deaton v. Commonwealth, 157 Ky. 308, it was held:

"That no confession obtained by means of sweating should be permitted as evidence in any court of law in this state, but shall be deemed to have been obtained by duress, if it be shown that such confession was made after the arrest of the party charged with the crime, and while he was in custody of the law. Acts 1912, page 542."

In the case under consideration it can not be denied that appellant did not make any explanations or admissions while charged with the offense, or in duress, or under arrest, but voluntarily explained the method and means by which he had come into possession of the shoes in question.

The last ground in the motion for a new trial is the one with which we shall deal and upon which we feel that attorney for appellant has a meritorious and substantial cause upon which to base his plea to this court for reversal of the judgment of the Fulton circuit court.

The evidence shows that Crowder, the principal in the theft, had resided in and around Fulton for twenty years; that his character had been good and in fact never questioned; and appellant claims that he was warranted in purchasing the shoes, relying upon the belief that Crowder was honest and that he came into possession of them fairly.

Realizing that it is generally difficult to sustain the charge, or to obtain a conviction, under an indictment for knowingly receiving stolen property, the courts have held that it is not absolutely necessary to have actual proof of this fact, but that evidence generally tending to

show that the accused could have learned that the property was stolen by the exercise of ordinary care and diligence was sufficient, still he should be allowed to prove conclusively that he relied, and had the right to depend upon, the good reputation of those who tendered the articles for sale, and from whom he eventually purchased them. If one were allowed to purchase anything that might be offered for sale from a mere stranger or from any person in whose honesty and integrity he had no right to rely, then the statute denouncing knowingly receiving stolen property would be a mere nullity; but if, upon the other hand, he alleges that he does so in good faith relying upon the honesty and good reputation of one that has resided in a community for twenty years and for whose past unimpeachable character well known citizens will vouch, this privilege should be accorded him; and the evidence discloses that attorney for appellant had secured the attendance of two well known citizens, namely, R. M. Wade, mayor of the city of Fulton, and J. E. Melton, master commissioner of the court, who would testify that they had known Jim Crowder for twenty years; that his general reputation for probity, morality, peace and good order had, up to the time of his arrest, been excellent.

However, the objection entered by the Commonwealth to this testimony and sustained by the court was so undeniably prejudicial to the rights of appellant as to make it reversible error.

We have before held that a mere technicality in the trial of a case of a nature not prejudicial to the cause of the accused would not be grounds for reversible error; but authorities are practically unanimous in the contention that where a serious wrong occurs by the admission of incompetent evidence, or denial of competent evidence, wherein a grave injustice has been done the interests of the accused, a reversal of a judgment should follow and is proper. For example, if these well known, reputable citizens of Fulton had testified before the jury trying appellant that Jim Crowder's reputation up to the time of this alleged sale had been good; that they deemed him an honest, law-abiding citizen, was not appellant, who had also known him as well, entitled to the same belief? If in relying thereon he received these shoes, resting in the thought that Crowder had obtained them honestly, it appears doubtful whether the jury would have found him guilty; and as this doubt must and does exist, we feel

that the court erred, and its decision was gravely detrimental to the rights of the accused.   See 34 Cyc. 525:

"Good Reputation.—It is competent for the defendant to bring evidence of the good reputation of the person from whom the goods were received."

And we also find further:

"It is also competent for the Commonwealth to show that the defendant knew that the person from whom he received the goods bore a disreputable character."

Therefore, it would seem that if it is the prerogative of the Commonwealth to prove that the character of the person from whom one is alleged to have knowingly received stolen property was bad, would it not stand to reason that the law, in its desire to see that justice is done and the accused shall be the recipient of all just and proper protection, should give him the right of proving that the one from whom he is alleged to have received stolen property had hitherto borne a character of a most desirable nature.   Feeling that this conclusion is both proper and right, the judgment is reversed.

Judgment reversed.