(No. 17682.—Reversed and remanded.)
THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, vs. ABRAHAM SAVAGE, Plaintiff in Error.

*Opinion filed April 20, 1927.*

1. CRIMINAL LAW—*what is proper evidence of good reputation.* Good reputation of the defendant may be shown by the fact that among those of his neighbors who know him best in the community in which he resides no discussion or comment of his reputation or matters bearing thereon has been had, and a competent witness may therefore properly base his opinion as to reputation on the fact that he has never heard anything said against the accused, and his testimony should not be stricken because he states that he has never heard anyone speak of the defendant's reputation.

2. SAME—*what is proper cross-examination to show prejudice of witness.* To show the prejudice of a witness against the defendant it is proper to ask a police officer, on cross-examination, whether he had warned the defendant, if he be acquitted, that he had better not return to the city where the crime was committed.

3. SAME—*State's attorney should not accuse defendant's counsel of telling lies in argument.* It is improper argument for the State's attorney to accuse the defendant's counsel of telling lies in his argument, as it tends to show a desire to procure an unfair and prejudicial influence with the jury.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. WILLIAM N. GEMMILL, Judge, presiding.

JAMES J. BARBOUR, and R. E. BLACKWOOD, for plaintiff in error.

OSCAR E. CARLSTROM, Attorney General, ROBERT E. CROWE, State's Attorney, and VIRGIL L. BLANDING, (EDWARD E. WILSON, and CLARENCE E. NELSON, of counsel,) for the People.

Mr. CHIEF JUSTICE STONE delivered the opinion of the court:

Plaintiff in error was convicted in the criminal court of Cook county of the crime of robbery with a gun, and he brings the case here for review.

The defense was that of alibi. Plaintiff in error, who is a negro, was at the time of the alleged crime employed by a colored club known as the DeLuxe Club. The evidence for the State consisted of the testimony of Fanny Bachechi and two police officers who made the arrest. The evidence of the prosecuting witness was that she lived at 1831 Wesley avenue, in Evanston, and on the evening of February 25, 1926, had been at the home of her employer in the neighborhood of her own residence; that about 9:15 o'clock, as she was walking north on Wesley avenue, she heard a man from behind her command her to stop; that he pointed a gun at her, forced her to turn around and walk east into the alley; that upon reaching the door of a garage he tried to open it, and failing in this he attempted to commit rape upon her; that at that time the lights in the adjoining house were turned on and frightened him and he seized her purse and ran. She further testified that she found her way to the doorstep of the home of a family by the name of VanDusen and there fainted. It appears further from the testimony for the People that the police were notified, and the complaining witness gave the description of her assailant as a negro about five feet in height, heavy-set, with a black overcoat and black hat or cap, and that he was very dark and had a Roman nose. It also appears that there was snow on the ground, and the tracks of the complaining witness and of her assailant were distinctly shown in the snow. It appears from the testimony of the policeman making the arrest that they followed the tracks of the assailant for several blocks; that he wore no rubbers, and the imprint in the snow was made by a large shoe with a wide sole and "stubby" toe,—an army-shaped shoe or a so-called Munson last. Later in the evening a negro was picked up by the police and taken before the complaining witness, but she said he was not the man and he was released. The next day plaintiff in error was taken to the home of the complaining witness by the police and she

identified him as her assailant. The day following plaintiff in error's arrest the complaining witness, at the request of the police, went to the police station and identified plaintiff in error as her assailant while he was in a line of five other negroes. She testified that the gun held by her assailant was a "shiny" revolver. She was shown a rusty revolver with a broken spring, which one of the police officers testified he found at the DeLuxe Club after the arrest of plaintiff in error. She identified it as the revolver, giving as her reason for such identification that as the plaintiff in error was the assailant that was the revolver. She also testified that there was no light in the alley where the attempted assault was made but that there was snow on the ground.

Officer Busseau, who arrested plaintiff in error, testified that when he found the revolver at the DeLuxe Club he asked plaintiff in error if it belonged to him, and that he said he supposed it did as much as anybody, as it was around the club. His testimony was corroborated by that of officer Bell, who also testified that the gun found at the DeLuxe Club and offered in evidence was rusty and not "shiny" and that the spring and handle were broken; that they searched the club for bullets after the arrest and searched plaintiff in error's room and clothing, but found no purse or money or loads for the gun or anything that would indicate the connection of plaintiff in error with the crime charged.

The testimony for the defense consisted of that of numerous witnesses that plaintiff in error was at the DeLuxe Club all of the evening of the crime, and that of a number of character witnesses. The testimony of the complaining witness was that the assault and robbery occurred at 9:15 P. M. Officer Ernest B. Leavell testified that he had been connected with the Evanston police force for over eleven years and had known plaintiff in error seven or eight years; that on the night of the alleged crime he heard of it at the

patrol box at 10:30; that his beat included a number of clubs where colored men congregated; that on the evening of February 25, 1926, he saw plaintiff in error at this club at eight o'clock, or a quarter after, and at nine o'clock; that his visits to the club took place as he was making his rounds; that at nine o'clock plaintiff in error was playing pool with two or three other men, one of whom was named Branch.

John Geischecke testified he had been an officer in the city of Evanston for sixteen years; that on the evening of the alleged crime he and officer Schultz went to the home of the complaining witness and got a description of her assailant; that they visited the scene of the crime with officers Feeley and Neathery, who showed them the foot-tracks. He testified that he saw the sticks used to measure the foot-tracks at the police station. This witness testified that the tracks of the assailant showed a shoe with a wide toe, a wide heel and a wide sole. He also testified that when they went to the club they compared the feet and shoes of plaintiff in error with the size of the tracks; that his shoes were much smaller and narrower, with pointed toes, while the tracks were broad toes, and that was the reason he was not arrested; that at the time of their examination of plaintiff in error his shoes were dry, as was his clothing. He testified, also, that the foot-prints in the snow were made with shoes without rubbers and appeared in no way like those worn by plaintiff in error; that another reason for not making the arrest was that plaintiff in error did not tally with the description of a heavy-set and very dark man, as he was neither heavy-set nor dark. Officer Schultz corroborated the testimony of officer Geischecke.

It appears from the evidence that from the DeLuxe Club, where plaintiff in error was employed, to the place of the crime is about six blocks by the most direct route.

Officer Neathery testified that about 9:45 on the evening of February 25 he made an examination of the foot-

prints in the snow at the place of the commission of the crime; that the tracks were made by a broad, round-toed shoe. This witness was corroborated by the testimony of officer Feeley. Officer Paasch testified that the sticks were brought to the headquarters that had been used for measuring the tracks in the snow, but that he did not know where they were at the time of the trial.

Elijah Irwin testified that he was at the DeLuxe Club on the evening of February 25, 1926, after eight o'clock and was there fifteen or twenty minutes, and that a man by the name of Branch and another man were present. The witness played a game of pool with plaintiff in error; that he left the club room in the neighborhood of nine o'clock and that plaintiff in error was there at the time; that he looked at his watch before leaving, because it was necessary for him to go back to his own place.

Edward Branch testified that he was in the DeLuxe Club on the evening of February 25 from 7:00 until 11:30 o'clock; that he saw officer Leavell at about a quarter to eight and two other men afterwards; that the witness Irwin came in and played a game of pool with Savage some time between eight and ten o'clock; that Savage did not go out any time after he saw him with Irwin or any time after officer Leavell was in; that no one else was in charge of the place, so far as he knew; that he remembers the occasion because witness had a dog which he washed while he was at the club.

Robert F. Logan testified that he conducted a shoe-shining parlor in Evanston; that on the evening of February 25, 1926, he was working on his car at 1029 University place, which was witness Irwin's garage; that about 8:35 he went to the DeLuxe Club, two doors west of the garage, and saw plaintiff in error and others there; that he remained in the club until 9:15, when he left to keep an engagement; that he remembers the time of leaving the club because he had an engagement at 9:30. He testified that

he played a game of pool with Savage and that a number of others were there.

Plaintiff in error on his own behalf denied any participation in the crime and testified that on the evening of February 25 he was at work at the DeLuxe Club; that his hours at that club were from five in the afternoon until midnight; that he served meals at the club and took his evening meals there; that the gun that was found at the club had been in the desk for a good while; that it was broken and of no use.

There was offered on behalf of plaintiff in error the testimony of numerous witnesses that he had at all times previously borne a reputation of being a peaceful and law-abiding citizen.

From this resume of the testimony it is evident that the evidence was sharply conflicting. Practically the only evidence in the record against plaintiff in error is the identification made by the complaining witness. While that identification is positive, it is shown by her testimony that the assault occurred in an unlighted alley on a dark night, the only light being that coming from the snow on the ground. Under such conditions the identification of the features of a colored man is rendered very difficult. It appears that plaintiff in error does not tally entirely with the description given to the police by the prosecuting witness nor do his shoes in measurement correspond to the shoe-tracks in the snow. While none of these matters are conclusive, they all go to affect the matter of the weight of the proof of guilt on the part of plaintiff in error. In this condition of the proof the record of the trial should have been particularly free from error. Numerous errors are assigned. They are principally errors in rulings on the admission of testimony, in remarks of the court and State's attorney, and in instructions to the jury.

Robert E. Wilson, a colored minister, was offered as a character witness. He testified on cross-examination that

he had not discussed plaintiff in error's reputation with anybody but that in the community in which he resided he knew his reputation as a law-abiding citizen, and that it was good; that he had known him a number of years and knew the people in the neighborhood in which he resided. The trial judge, in examining the witness, asked if he had ever heard anyone speak about the reputation of plaintiff in error. He said he had not. The court thereupon, on motion of the State's attorney, struck out the testimony of the witness. This also occurred as to the testimony of the witness Robert F. Logan. This was error. Good reputation may be shown by the fact that among those of his neighbors who know him best in the community in which he resides no discussion or comment of his reputation or matters bearing thereon has been had, and a competent witness to good reputation may therefore properly base his opinion as to reputation on the fact that he has never heard anything said against the accused. *People* v. *Okopske,* 321 Ill. 32; *Gifford* v. *People,* 148 id. 173.

It is also contended that the court erred in refusing to permit counsel to ask officer Busseau, on cross-examination, whether he had stated to plaintiff in error, after his arrest, that if he beat the case he had better not come back to Evanston. This question went to the matter of prejudice on the part of the officer against plaintiff in error, and the witness should have been allowed to answer.

Certain remarks of the State's attorney are complained of as prejudicial. The record contains remarks which no State's attorney should use in the argument of a case, such as charging counsel for plaintiff in error with lying in his argument. Such statements do not indicate care on the part of the State's attorney to avoid improper influence of the jury, but rather tend to show a desire to procure an unfair, and therefore prejudicial, influence with the jury. Such conduct has always been condemned.

Objection is also made to prejudicial remarks on the part of the court. The record contains a colloquy between the court and counsel for plaintiff in error that did not tend to keep the trial free from all influences that should be absent; but in this, counsel appears to be at fault as well as the court.

Objection is made to instruction 4 on the issue of alibi. That instruction has been approved in *People* v. *Schladweiler,* 315 Ill. 553, and in cases there cited.

For the errors pointed out the judgment of the criminal court is reversed and the cause remanded.

*Reversed and remanded.*