THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
DUIL THORNTON, Defendant-Appellant.

Fifth District   No. 76-309

Opinion filed May 12, 1978.

Michael J. Rosborough and A. Michael Kopec, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Clyde L. Kuehn, State's Attorney, of Belleville (Bruce D. Irish and Martin N. Ashley, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. PRESIDING JUSTICE EBERSPACHER delivered the opinion of the court:

Defendant, Duil Thornton, brings this appeal from the judgment entered by the circuit court of St. Clair County following a bench trial, finding defendant guilty of the offense of armed robbery and sentencing him to a term of eight to 24 years' imprisonment. On appeal defendant raises the following issues: (1) whether he expressly and understandingly waived his right to a jury trial; (2) whether he was proven guilty beyond a reasonable doubt; (3) whether the trial court erred in refusing an offer of proof that defendant had no reputation for carrying or using a gun or for using or threatening the use of force; and (4) whether the sentence imposed is excessive. Additionally, with regard to the first issue, we must consider a motion by the State to amend the record to show a waiver of jury trial.

The instant charge stems from the March 14, 1975, armed robbery of Robert Schmitt, the manager of the Tri-City Grocery Store. At trial Schmitt testified that on the morning of the crime, he saw a man walking around the back of the store with no shopping cart and no items in his hands. Around 20 minutes later, this same man called to Schmitt and asked for help in choosing shaving lotion. He was, however, not looking at shaving lotion but rather, the man was pointing to alcohol. Schmitt and the man were standing near the store's office at this time. The man again requested help from Schmitt but as Schmitt approached him, he pulled out a gun and demanded money. Schmitt filled a box with cash from the office and gave it to the man who then left. At trial, Schmitt positively identified defendant as the man who robbed him. He testified that the lights in the store were bright and that during the crime he had observed defendant face-to-face and from as close as one foot from defendant. He described defendant as "shabby," being unshaven, smelling of alcohol and having no teeth. He stated that defendant wore a black and orange cap over gray hair, a black and red plaid jacket and jeans.

Roland Davis next testified that he worked in the grocery store and that on the morning of the crime, he saw defendant who approached him and inquired about getting a job. He gave a similar description of defendant

as that given by Schmitt. Davis further stated that 15 or 20 minutes after he saw defendant, he learned that the robbery had just occurred.

Martha Harvell testified that at the time of the crime she was shopping in the store. She stated that just before the robbery, she had seen defendant on three occasions at various locations in the store. Her attention was drawn to defendant because she felt that he was acting suspicious in that he was continually looking at the store's office and he was apparently not shopping. Her description of defendant was also similar to that given by Schmitt.

The State's evidence further showed that six days after the crime, Schmitt, Davis and Harvell each separately identified defendant, as the man who had committed the crime, by choosing his photograph from a group of 10 photographs.

Defendant presented a number of alibi witnesses to support an alibi defense.

We will consider defendant's first contention last, and we turn to the issue of whether defendant was proven guilty beyond a reasonable doubt.

■■ As a general rule, a positive identification by a single credible witness with an ample opportunity to observe will be sufficient to support a conviction. (*People v. Clarke*, 50 Ill. 2d 104, 277 N.E.2d 866; *People v. Jackson*, 23 Ill. App. 3d 1011, 320 N.E.2d 400.) Here, the testimony of Davis and Harvell place defendant at the scene of the crime and the testimony of Schmitt establishes that defendant committed the crime. Essentially, defendant contends that these witnesses lacked the opportunity to observe the perpetrator. The record shows, to the contrary, that the witnesses, and most crucially Schmitt, had an ample opportunity to observe defendant, under excellent conditions, and under circumstances which would concentrate the mind on the appearance of defendant. Although defendant does not directly raise the issue, he nonetheless insinuates that the in-court identifications of defendant were a product of the prior photographic identifications of him. Prior to trial a motion to suppress the identifications was heard and denied by the trial court. We do not find from the evidence adduced therein that the photographic identifications were so impermissibly suggestive as to give rise to a substantial likelihood of irreparable misidentification as insinuated. (See *People v. Porter*, 29 Ill. App. 3d 456, 330 N.E.2d 599.) The in-court identifications of defendant were neither vague, doubtful or uncertain and were based on observations of defendant at the time of the commission of the crime. Defendant's argument resolves itself on whether the alibi witnesses are to be believed and the State's witnesses disbelieved. The lower court after hearing the witnesses, judging their

demeanor and assessing their credibility, stated that although he was not "impressed" with Davis, he fully believed the testimony of Schmitt and Harvell and disbelieved the testimony of defendant's alibi witnesses and consequently he found defendant guilty of the commission of the offense. After a careful review of the record, we find no basis to disturb the findings of the trial court.

Next, defendant contends that the court erred in refusing evidence of his character. Police Officer Robert Stanton testified during trial on behalf of the State about the police investigation of the crime. During cross-examination it was stipulated by the parties that defendant could temporarily call Stanton as his own witness for purposes of proving defendant's character. Stanton testified that he had lived in the community for 25 years, that he had known defendant's family for about 16 years and that he had known defendant personally for about five years. He further stated that he was familiar with defendant's reputation. Defendant then attempted to question Stanton concerning defendant's reputation but the State's objections to the form of the questions were sustained. Defendant made the following offer of proof:

"Q. From your knowledge of Duil Thornton and knowing his relationship with you and the police department, does he have a reputation for having a gun and using a gun?

A. Not to my knowledge.

Q. And on the same basis you are not—do you know whether or not he has a reputation for using force or threatening force?

A. Also not to my knowledge."

■■ It is settled that a defendant can make proof of such previous good character as is inconsistent with the commission of the crime charged. This proof is made by showing a general reputation for the specific trait of character involved to suggest the inference that the defendant acted consistently with his character. (*People v. Lewis*, 25 Ill. 2d 442, 185 N.E.2d 254; *People v. Wells*, 80 Ill. App. 2d 187, 224 N.E.2d 288.) A general reputation for nonviolence is a relevant good character trait where a defendant is charged with the commission of armed robbery. (*People v. Kendall*, 357 Ill. 448, 192 N.E.2d 378.) Defendant herein sought to prove a character trait for nonviolence inconsistent with the charge of armed robbery by showing the absence of a reputation for having and using guns and threatening and using force under circumstances in which his character was well known in the community.

The State contends that proof of a trait of good character cannot be made in this manner and cites *People v. Partee*, 17 Ill. App. 3d 166, 308 N.E.2d 18, wherein the court held that a defendant may not "inquire of a negative attribute of character, and infer that its absence is sufficient to lay

a proper foundation for good reputation." (17 Ill. App. 3d 166, 179, 308 N.E.2d 18, 28.) We cannot accept this view under the facts established herein.

■■ It has long been held that to prove a good character trait, a witness may testify that he has never heard anything said against the defendant or that he has never heard the matter discussed, providing that the witness occupied such a position that in the ordinary course of events he would have heard anything that might have been said concerning the defendant. (*People v. Savage*, 325 Ill. 313, 156 N.E. 310; *People v. Huffman*, 325 Ill. 334, 156 N.E. 342; 5 Wigmore, Evidence §1614 (Chadbourn rev. ed. 1974).) In this situation, the inference that the defendant's reputation is good is predicated on the absence of a bad reputation, and the supposition that such a bad reputation would have occurred if the good character trait were lacking. This reasoning should apply equally to the proof of a good character trait by testimony of a witness as to the absence of a reputation for a bad, correlative character trait providing the defendant is known in his community and the witness, so testifying, has been in such a position that he would have known of such a reputation if it existed. See 2 Wigmore, Evidence §664 (3d ed. 1940).

■■ In the case at bar, evidence established that Police Officer Stanton would likely have known of a reputation of defendant of having and using guns and threatening and using force if such a reputation existed. Defendant offered to prove that Stanton knew of no such reputation to support the inference that defendant had an opposite, correlative good character trait. We conclude that defendant was entitled to make such proof and have the evidence and its sufficiency and weight considered by the trial court as trier of fact, as all other evidence, for determination. However, where, as here, guilt is clearly established, good character or reputation avails nothing. (*People v. Jinkins*, 82 Ill. App. 2d 150, 225 N.E.2d 657.) In light of the evidence in the case at bar proving defendant's guilt beyond a reasonable doubt, we find that the error was harmless.

Next defendant contends that the sentence imposed of eight to 24 years imprisonment is excessive, citing his age which was 56 years at the time of sentencing and that he was an alcoholic and in poor health.

■■ Sentencing is a matter of judicial discretion, and absent an abuse of discretion, the sentence of the trial court may not be altered upon review. (*People v. Perruquet*, 68 Ill. 2d 149, 368 N.E.2d 882.) The factors cited by defendant herein were brought to the attention of the trial court and were considered by it, however; the court imposed the sentence because of defendant's long record of criminal conduct. As stated by the court: "You have been convicted four times of non-violent felonies, five misdemeanor convictions and twelve ordinance violation convictions." Under the

rationale of *Perruquet*, we find no abuse of discretion and in consideration of the nature and circumstances of the offense and the history and character of defendant, we find that the sentence is not excessive.

Lastly, we will consider defendant's contention with regard to waiver of a jury trial. The record on appeal, particularly the verbatim transcript of the proceedings, contains no reference whatsoever to a waiver of jury trial by defendant. Defendant argues that because the record is silent as to jury waiver, such may not be presumed but rather the cause must be reversed and remanded. (*People v. Rosen*, 128 Ill. App. 2d 82, 261 N.E.2d 488.) The State has not disagreed with defendant's argument on this issue but has moved for leave to file a "bystander's report" to amend the record. Attached to the motion is an unverified declaration by Assistant State's Attorney Carmen Durso, the prosecuting attorney in the court below, which is captioned "Bystander's Report" and in which he states that defendant's trial attorney waived jury trial in open court and in the presence of defendant. Also attached to the State's motion is a transcript of a hearing held on May 6, 1977, before Chief Circuit Judge Joseph Cunningham. It is to be noted that prior to the date of this hearing, a notice of appeal had been filed by defendant in this court and the office of the State Appellate Defender had been appointed to represent defendant. Neither defendant or his appointed counsel appeared at the May 6 hearing.

At the hearing, the court examined Judge Robert Gagen, the trial judge during the instant bench trial, who testified that he recalled that he had questioned defendant about a jury waiver just prior to trial and that after a private conference between defendant and his trial attorney, jury trial was waived. At the conclusion of the court's examination of Judge Gagen, the court ordered "that this proceeding be transcribed and made a part of the record on appeal." The court then next called Del Goldenhersh, defendant's former privately retained trial attorney, as a witness. Goldenhersh testified that long before the date of trial, he had discussed with defendant the options of a jury or bench trial and that he, the attorney, had determined that it would be better to proceed without a jury. Goldenhersh, however, stated that he could not remember whether, in fact, there had been a waiver in open court. Finally, Assistant State's Attorney Durso testified that prior to trial defendant was questioned by Gagen about a waiver and that defendant affirmed the decision of defense counsel to waive jury trial. In addition to the foregoing, much of the testimony of the witnesses centered on the question of what may have caused the court reporter to fail to transcribe the jury waiver. At the conclusion of the hearing no findings of fact were made by the court.

In response to the State's motion to amend the record in this court, defendant has filed an objection to that motion, citing *People v.*

*Chitwood,* 42 Ill. App. 3d 680, 356 N.E.2d 592, and he argues that the proposed amendment is improperly made since it is based solely on the memory of the trial judge and other witnesses and not supported by the production of some note or document contained in the record or minutes of the trial judge. Alternately, noting that leave to appeal had been granted in *Chitwood,* defendant has filed a motion for leave to supplement the record on appeal with an affidavit by defendant. In it, defendant states that he had desired a jury trial; that he had never been asked by the trial court if he wished to waive that right nor had he waived it in open court; that he was not present in court when that right may have been waived; and that he had been simply told by his trial counsel that a jury trial was going to be waived. The State, in turn, has filed an objection to defendant's motion to amend and argues that the defendant's motion is an attempt to contest the accuracy of the State's bystander's report which, the State argues, is untimely under Supreme Court Rule 323(c) (Ill. Rev. Stat. 1975, ch. 110A, par. 323(c)).

The above motions and objections thereto have all been taken with the case. It is additionally to be noted that defendant asserts in his brief, supported by affidavit and undisputed by the State, that neither he nor Assistant Defender A. Michael Kopec, the attorney assigned to represent him, nor the office of the State Appellate Defender, had received any notice of the May 6 hearing prior thereto. Defendant thus argues that he had no opportunity to contest or contradict testimony at the hearing that a proper waiver had been made.

Although it is not entirely clear, it appears that the State attempted to proceed in part in its motion to amend the record under Supreme Court Rule 323(c) despite its failure to comply with the notice requirements of that rule. In any event, this rule only provides a procedure for those cases on appeal in which "no verbatim transcript of the * * * proceedings is obtainable." Since in the case at bar there is in fact a verbatim transcript of the proceedings below, the rule is not directly applicable. (See *Hartgraves v. Don Cartage Co.,* 63 Ill. 2d 425, 348 N.E.2d 457.) The State only seeks to amend a purported "material omission," hence support therefor must be found in Supreme Court Rule 329 (Ill. Rev. Stat. 1975, ch. 110A, par. 329). In this regard, defendant in his objection to the State's motion to amend, originally placed reliance on *People v. Chitwood,* which during the pendency of this appeal was reversed by our supreme court. (67 Ill. 2d 443, 367 N.E.2d 1331.) Defendant now concedes that under *Chitwood,* since the State does not seek an amendment which impeaches or contradicts the contents of the record, it is not required to prove that some document, record, quasi-record or minutes support the proposed amendment. See *People v. Henderson,* 54 Ill. App. 3d 46, 369 N.E.2d 556.

Supreme Court Rule 329 provides in part:

"The record on appeal shall be taken as true and correct unless shown to be otherwise and corrected in a manner permitted by this rule. Material omissions or inaccuracies or improper authentication may be corrected by stipulation of the parties or by the trial court, either before or after the record is transmitted to the reviewing court, or by the reviewing court. Any controversy as to whether the record accurately discloses what occurred in the trial court shall be submitted to and settled by that court and the record made to conform to the truth. * * *" (Ill. Rev. Stat. 1975, ch. 110A, par. 329.)

This rule clearly contemplates a hearing before the trial court where there is a dispute between the parties concerning the accuracy of the record or a proposed amendment thereto. (*People v. Henderson.*) Just such a dispute has arisen between the parties herein in that defendant challenges the accuracy of the proposed amendment, denies the substance of the bystander's report and testimony at the May 6 hearing, and states by affidavit to the effect that the record as it presently exists gives a true account; that is, that no waiver of jury was made by him or his trial attorney in his presence. The State would have us ignore defendant's affidavit and deny his motion to supplement the record therewith on the grounds that the record as amended by the State cannot be impeached or contradicted by affidavits. The State's argument is premised on the theory that this court must grant the State's motion to amend because the lower court settled the controversy at the May 6 hearing when it ordered that the transcript of that hearing be made part of the record. This argument is specious.

■■ Contrary to the explicit provisions of Supreme Court Rule 329, the controversy herein was not in actuality "submitted to" and "settled by" the lower court at the May 6 hearing. It was not brought to the court's attention that defendant disputed the testimony that a jury waiver had been made; rather the court was under the impression that the State merely sought to correct an undisputed, inadvertent omission in the record. Moreover, at the conclusion of the hearing, the court made no findings settling the controversy nor could such a settlement lawfully be made since defendant received no notice of the hearing and had no opportunity to be heard. It is a fundamental precept of fairness and justice that defendant is entitled to such notice and opportunity before a determination is made. The State urges that defendant was represented at the hearing by his former counsel; however, there can be no doubt that the trial attorney appeared not on behalf of defendant but as a witness. At the time of the hearing, defendant was represented by the office of the State Appellate Defender and no attorney from that office was present at the hearing to represent the views of defendant.

Thus we find the present state of this cause to be that the State has

538

moved to amend the record and defendant has in effect objected to the amendment challenging the accuracy thereof by affidavit denying a jury waiver was in fact made. A proper settlement of this controversy in the trial court, as required by Supreme Court Rule 329, will effectively dispose of the sole remaining issue in this appeal. Accordingly we will remand this cause to the trial court for a hearing of which defendant is to receive reasonable notice and an opportunity to be heard. If following the hearing the trial court finds that defendant waived his right to a jury in open court prior to the bench trial or that such was done by defense counsel in the presence of defendant, then the State's motion to amend is to be granted and the judgment entered by the circuit court of St. Clair County is affirmed. If, on the other hand, the court finds that the record as it presently exists conforms to the truth and a jury waiver as alleged by the State was not made, then the State's motion to amend is to be denied and the judgment entered is reversed and the cause remanded for a new trial.

Remanded with directions.

McCALLISTER and KARNS, JJ., concur.