THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
GEORGE MEARES EL, Defendant-Appellant.

First District (4th Division)   No. 78-1531

Opinion filed March 27, 1980.

Ralph Ruebner and Michael Mulder, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Joan S. Cherry, and Thomas J. Leanse, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE LINN delivered the opinion of the court:

At the conclusion of a jury trial in the circuit court of Cook County, defendant, George Meares El, was found guilty of murder (Ill. Rev. Stat. 1977, ch. 38, par. 9—1). He was sentenced to 25 to 75 years imprisonment.

On appeal defendant contends the trial court committed reversible error by: (1) unduly restricting his right to cross-examine a State's witness; (2) improperly allowing the State, during its case-in-chief, to produce evidence of his prior bad conduct and the victim's good conduct; and (3) denying him a fair trial in allowing the State to present irrelevant and prejudicial information to the jury.

We affirm.

The evidence discloses that the incident occurred in the lobby of the LaSalle Plaza Hotel in Chicago. The victim, Charles Lee, died of a knife wound inflicted in his left side. At trial, defendant claimed self-defense. He admitted stabbing Lee but alleged he did so in self-defense since Lee first attacked him with a dagger. This dagger was never found.

The State's witness, Robert Williams, testified that on the morning of June 17, 1976, he was working as desk clerk at the LaSalle Plaza Hotel. At approximately 11:45 a.m., he saw Lee enter the hotel where Lee met the defendant who had been standing in the lobby for a short while. No one

else was in the lobby area. Both the defendant and Lee were residents of the hotel.

Williams heard the defendant and Lee arguing over a debt of $20 that defendant claimed was due him from Lee. During the course of the argument, Williams went to answer his telephone, which was located behind a plywood partition that separated his desk from the hotel lobby and blocked his view into the lobby. When he returned to his original position, he saw Lee standing against the wall with blood flowing down his left leg. Defendant was standing nearby. Williams walked over to Lee and held him so that he would not fall. Williams did not see any weapons or knives being held by either Lee or defendant, nor did he see any on the floor.

Together with defendant, Williams attempted to carry Lee to the Henrotin Hospital located a block and a half from the hotel. Just before they reached the hospital, Lee collapsed. Williams ran into the hospital for help. When he returned to Lee he noticed that defendant had left. Lee was taken into the hospital where he was pronounced dead on arrival.

Several police officers testified on behalf of the prosecution. Officer Raymond Cowell testified that at the hospital he inspected the clothing and other personal effects of Lee and found no weapons. Officer Jack Runyon testified that while investigating the scene of the incident he did not find any knives or other weapons that may have been used in the fatal wounding of Lee. Further testimony disclosed that several police officers, after arriving at the hotel, went to defendant's room and upon being admitted by defendant they placed him under arrest. As defendant was being led from the hotel, he asked the police, "The man I cut, is he dead?"

Inside defendant's hotel room the police found a hunting knife in a sheath, a stained towel, and a small notebook that was open to a page indicating that the defendant had recently loaned $45 to a man named "Charles", with a notation that either $20 or $25 had been repaid (defendant later admitted that this page referred to Charles Lee). These items were admitted into evidence. Expert testimony at trial established that the knife found in defendant's room had traces of blood on it, but an insufficient amount to determine a blood type, and that the knife could have been used to inflict the type of wound that caused Lee's death.

Defendant testified on his own behalf. He asserted that he was talking to Lee in the hotel lobby and was inquiring when Lee would repay him the $45 owed him when suddenly, and without forewarning, Lee attacked him with a dagger. Defendant alleged he then reached into his pocket and took out a pocket knife that he carried with him at all times, opened it, and while defending himself from Lee's attack, stabbed Lee before Lee could injure him. Defendant denied that the knife found in his room was the weapon he used to wound Lee. Defendant said that after

Lee was stabbed both of them dropped their knives on the hotel lobby floor.

In rebuttal, Investigator Joseph Stachula, testifying on behalf of the State, asserted that shortly after the arrest, defendant told him that Lee and he had been fighting, that he had struck Lee, who then fell on a piece of broken glass and cut himself. Stachula said he then told defendant that the wound that killed Lee could not have been caused by a piece of glass; whereupon, defendant related that he had stabbed Lee in self-defense since he was being attacked by Lee.

## OPINION

### I

Defendant first contends the trial court committed reversible error in unduly restricting his right to cross-examine the State's principal witness, Robert Williams, as to Williams' past or present drug use. The State asserts that the defendant failed to preserve this issue for appeal since the record discloses that the trial court at no time made a final ruling on the issue, and additionally that the defendant failed to raise this issue in his written motion for a new trial. We believe the State's position to be correct.

The record clearly indicates that defense counsel began his cross-examination of Williams by asking him whether he was now using or ever had used narcotics. Williams denied present, but admitted past use. The State, contending it was taken by surprise by Williams' response, requested a side-bar conference with the trial judge. After a brief discussion, a hearing outside the presence of the jury was held in chambers. There, defense counsel was allowed to question Williams as to Williams' drug use. Williams testified he had used heroin but stopped using it in 1971. He also admitted to the recent use of a prescription drug, Talwin, which he claimed he used for relief of back pain. Williams said that at one time he had a prescription for Talwin but that he no longer had one. Williams was also required to display his arms so that the trial judge could ascertain whether they bore recent scars that might disclose the use of narcotics. The trial judge commented that he noticed no scars of recent origin.

Defense counsel insisted he had a right to pursue, before the jury, this line of cross-examination of such use directly attacked the credibility of the witness.[1] The prosecution argued that before such cross-examination could be pursued, defense counsel was required to lay a foundation showing the witness to be addicted to narcotics. The trial judge, without

---

[1] At trial and in his brief on appeal, defense counsel cited several Illinois cases strongly supporting his position. See *People v. Strother* (1972), 53 Ill. 2d 95, 290 N.E.2d 201; *People v. Lewis* (1962), 25 Ill. 2d 396, 185 N.E.2d 168; *People v. Lurry* (1979), 77 Ill. App. 3d 108, 395 N.E.2d 1234; *People v. Perez* (1968), 92 Ill. App. 2d 366, 235 N.E.2d 335.

making a final ruling, concluded the conference by saying, "I'll take the matter under advisement at this moment. In the meantime there will be no further questions related to anything that was discussed in chambers * * *."

Thereafter, the trial continued with no further mention of the issue. Defendant never again asked the trial judge to render a final ruling on the matter. After the conclusion of the trial, a subsequent oral motion for a new trial was made. The State objected to the oral form of the motion and thereafter the defendant presented a written motion for a new trial. The written motion did not assert as reversible error the contention now being put forth.

When a trial court reserves ruling on the admissibility of evidence, the party detrimentally affected must insist on a subsequent ruling to preserve the issue for appeal. (*People v. Waller* (1977), 67 Ill. 2d 381, 367 N.E.2d 1283; *People v. Kostos* (1961), 21 Ill. 2d 496, 173 N.E.2d 466.) Also, to preserve for appeal any issue, including a constitutional one, the defendant must specify that issue as grounds for a new trial in his written post-trial motion. (*People v. Precup* (1978), 73 Ill. 2d 7, 382 N.E.2d 227; *People v. Pickett* (1973), 54 Ill. 2d 280, 296 N.E.2d 856.) In the present case the defendant failed to do either of the above, thereby waiving the issue on appeal.

At oral argument, the defendant contended that he did preserve the issue by making an oral motion for a new trial prior to presenting his written motion. Defendant is correct in his contention that an oral motion for a new trial preserves for appeal all possible errors contained in the trial record; however, this is so only if the State fails to object to the oral form of the motion. (*People v. Whitehead* (1966), 35 Ill. 2d 501, 221 N.E.2d 256; *People v. Robinson* (1960), 21 Ill. 2d 30, 171 N.E.2d 11; *People v. Flynn* (1956), 8 Ill. 2d 116, 133 N.E.2d 257.) Here, the State objected to the oral form of the motion for a new trial and defendant filed a subsequent written motion that did not specify his point of error. The written motion, to be effective, must set forth with adequate specificity the error relied upon for a new trial. (See *People v. Nunez* (1974), 24 Ill. App. 3d 163, 320 N.E.2d 462.) This was not done here and the objection is considered waived.

We are aware that in certain instances waiver will not be recognized and that error at trial may be reviewed, although not technically preserved for review. Thus, Supreme Court Rule 615(a) (Ill. Rev. Stat. 1977, ch. 110A, par. 615(a)) provides in part: "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court." In noting this rule's limitations, the Illinois Supreme Court, in *People v. Pickett* (1973), 54 Ill. 2d 280, 282-83, 296 N.E.2d 856, 858, stated:

"This rule does not mandate that a reviewing court consider all errors involving substantial rights whether or not the same have been brought to the attention of the trial court. Rather the rule is a means of meliorating the harshness of the strict application of the general waiver rule. As this court stated in *People v. Burson* (1957), 11 Ill. 2d 360, 370, 143 N.E.2d 239, 245: 'The court may, as a matter of grace, in a case involving deprivation of life or liberty, take notice of errors appearing upon the record which deprived the accused of substantial means of enjoying a fair and impartial trial, although no exceptions were preserved or the question is imperfectly presented.' Likewise, in criminal cases in which the evidence is closely balanced this court has held that it may consider errors that have not been properly preserved for review. [Citations.]"

■ We do not find the defendant here falls into the parameters which compel the imposition of the "plain error rule" and require this court to disregard the State's claim that the issue asserted indeed was waived. Nor can we conclude the defendant was deprived of a fair and impartial trial by his inability to cross-examine Williams on his past or present drug use. Here, the totality of the evidence presented at trial was not so closely balanced as to mandate that such inquiry should have been allowed to preserve defendant's substantial rights. Even if we were to strike all of Williams' testimony, there is still ample evidence in the record, including the defendant's own testimony, showing that, beyond a reasonable doubt, defendant was properly convicted of having committed the offense with which he was charged. The only real issue at trial was one of self-defense. It was up to the trier of fact, the jury here, to choose to believe the defendant's story that the victim had attacked him with a dagger or to believe the evidence of the State that the defendant was guilty of murder beyond a reasonable doubt. We note that Williams, who did not see the actual stabbing of Lee, testified only to the events that occurred before and after the act, events that were later substantially verified by the defendant himself.

We find defendant's first contention to be without merit.

## II

Defendant next contends the trial court committed reversible error by allowing Williams, during the State's case-in-chief, to testify as to prior specific instances of the defendant's bad conduct and the victim's good conduct. During direct examination, Williams asserted that he had known the defendant three years and Lee two years. He said he saw Lee almost

every day, but he did not say how often he saw the defendant. Based on this foundation, the State asked Williams the following questions that were answered over objection:

"Q. During the three year period that you have known [the defendant] have you known him to carry a knife?

A. Yes.

\* \* \*

Q. Mr. Williams, during the time you have known Charles Lee, had you known him to carry a knife?

A. No."

The defendant contends this evidence was relevant only to prove defendant's violent character and the victim's peaceful character, and as such, it was inadmissible during the State's case-in-chief and inadmissible entirely because character can only be proven by testimony as to the witness' knowledge of one's general reputation in the community. At trial, the State argued the evidence was admissible since the issue in the case was self-defense. Here on appeal, the State argues the evidence was not evidence of character and was admissible to prove circumstantially that the defendant was probably carrying a knife at the time of the murder and that the victim was not.

■ Assuming for purposes of argument the evidence was evidence of character, then well-settled rules dictate that the evidence was improperly admitted. Evidence of defendant's violent character to prove he acted in conformity with that character at the time in question is inadmissible until the defendant has put into evidence proof of his peaceful character. (See *People v. Holt* (1947), 398 Ill. 606, 76 N.E.2d 474; *People v. Willy* (1921), 301 Ill. 307, 133 N.E. 859; *People v. Haas* (1920), 293 Ill. 274, 127 N.E. 740.) Similarly, evidence of the victim's peaceful character to rebut a claim of self-defense is inadmissible until the defendant offers evidence tending to prove self-defense. (See *Davis v. People* (1885), 114 Ill. 86, 29 N.E. 192; McCormick, Evidence §193, at 461 (2d ed. 1972).) Also, in such cases, character can be proven only by testimony as to the witness' knowledge of one's general reputation in the community. (*People v. Lyns* (1954), 4 Ill. 2d 396, 122 N.E.2d 809; *People v. Stanton* (1953), 1 Ill. 2d 444, 115 N.E.2d 630; *People v. Willy* (1921), 301 Ill. 307, 133 N.E. 859; *People v. Thornton* (1978), 61 Ill. App. 3d 530, 378 N.E.2d 198.) At trial, the State followed none of these rules. The State's contention that the evidence was not evidence of character but was offered only to prove circumstantially that the defendant probably had a knife at the time of the murder and the victim did not, appears to be based on a distinction between character traits and personal habits and a rule followed in some jurisdictions that evidence of personal habits is admissible in all cases to prove that one acted in conformity with those

habits at the time in question. (See, *e.g.*, Fed. R. Evid. 406; Cal. Evid. Code §1105 (West 1966).) However, we need not concern ourselves with the distinction sought to be raised by the State since we believe that any error that may have occurred in admitting the testimony of Williams to be harmless.

■■■ The record here clearly shows that during cross-examination of the defendant by the State, the defendant unequivocally admitted to carrying a knife with him at all times. When a defendant substantially verifies wrongfully admitted evidence, any error that occurred in allowing that evidence to be presented originally is generally rendered harmless. (See *People v. Auilar* (1974), 59 Ill. 2d 95, 319 N.E.2d 514; *People v. McCorry* (1972), 51 Ill. 2d 343, 282 N.E.2d 425.) We see no reason to ignore this principle in the present case. As to the testimony that the victim did not carry a knife, we cannot hold that such testimony substantially affected the result of the trial. The defendant's testimony that he had been attacked by Lee who was wielding a dagger was sufficiently rebutted by the State's evidence showing that no dagger was found and by the defendant's prior inconsistent statement. While we recognize that reversible error occurs when the jury's verdict of conviction may reasonably have resulted from such error (*People v. Morehead* (1970), 45 Ill. 2d 326, 259 N.E.2d 8, *cert. denied* 400 U.S. 945, 27 L. Ed. 2d 251, 91 S. Ct. 251; *People v. Helm* (1968), 40 Ill. 2d 39, 237 N.E.2d 433), we do not find that to have been the case here. Thus, any error that may have occurred was harmless.

### III

Defendant's final contention is that he was denied a fair trial by the State's attempts to present irrelevant and prejudicial information to the jury, by the prosecutor's calling him a "loan shark" and a "peddler of goods," and by the trial court's admitting into evidence and submitting to the jury defendant's notebook reflecting various loan accounts of the victim and other residents of the hotel.

■ The defendant asserts that some remarks of the prosecutor and certain evidence elicited by the State during the trial had no relationship to the issues being tried, but were inserted only to show the alleged evil nature of the defendant and to prejudice the defendant in the eyes of the jurors. Citing *People v. Gregory* (1961), 22 Ill. 2d 601, 177 N.E.2d 120, defendant correctly states he is entitled to have his guilt or innocence determined solely with reference to the crime with which he is charged . and that his freedom should not be jeopardized by improper and prejudicial conduct on the part of the prosecution.

Defendant points to certain remarks made by the prosecutor in the

opening statement concerning the defendant's lifestyle, such as reference to the unusual protective security devices installed in the defendant's hotel room (defendant had a steel gate barring the door to his room), and the high quality of the defendant's living quarters compared with those of the other residents (defendant's room, unlike others, had kitchen facilities and a bathroom), and the fact that many other residents of the hotel were unemployed and borrowed money from the defendant on a regular basis. At one point, the prosecutor told the jury, "[T]hose iron gates and bars * * * were to keep the people out of the apartment, to keep them from getting the goods that that particular person peddled in that apartment." Defense counsel objected to some of these remarks and failed to object to others. Whenever he did object, the prosecutor would answer that he would move on with his statement but he believed the evidence would show all of these things to be true. Many of these things were later shown to be true by the evidence presented.

Defendant also points to the fact that his notebook showing he had loaned money to the victim and to other residents of the hotel was admitted into evidence, and points to certain references in the prosecutor's closing argument labeling the defendant a loan shark capable of using harmful enforcement methods. Defendant objected to these remarks and the trial judge promptly sustained the objections and directed the jury to disregard the prosecutor's remarks.

■■■ Our review of the total record compels us to conclude that, while certain of the characterizations of the defendant and some of the evidence relating to defendant's activities were strong and forceful and bordered on being improper, when taken as a whole they were not sufficiently prejudicial to the defendant so as to have denied him a fair trial. In fact, the evidence and the comments relating to the defendant's lifestyle—the security measures involving his living quarters, the high quality of his room as compared to others, and his lending money to the other residents of the hotel—and the defendant's notebook showing he had loaned money on a regular basis to the victim and others, all focused on the nature of defendant's business activities and were relevant to establish the motive attributable to defendant in connection with the stabbing of Lee. Proof of motive is always relevant in a criminal case to show that defendant committed the offense with which he is charged (*People v. Jorczak* (1937), 366 Ill. 507, 9 N.E.2d 227), and evidence tending to show motive on the part of the accused is admissible (*People v. McDonald* (1936), 365 Ill. 233, 6 N.E.2d 182; *People v. Strause* (1919), 290 Ill. 259, 125 N.E.2d 339). Also, where evidence is relevant and otherwise admissible, it is not to be excluded merely because it may tend to prejudice the accused. (*People v. Hairston* (1970), 46 Ill. 2d 348, 263 N.E.2d 840, *cert. denied* (1971), 402 U.S. 972, 29 L. Ed. 2d 136, 91 S. Ct.

1658.) As pointed out by the State, there were no eyewitnesses to the fatal stabbing. The State attempted to show the defendant's motive for the murder was directly connected to his business activities and to the enforcement of repayment of money owed by the victim to the defendant.

█▌▌▌▌ As to the prosecutor's references to the defendant as a loan shark capable of using harmful enforcement methods, we note that the trial judge promptly sustained objections to this characterization and directed the jury to disregard the prosecutor's remarks. It is presumed that a jury will heed the judge's instructions in disregarding improper comments and that any harm that may have occurred is thereby cured. (*People v. Therriault* (1976), 42 Ill. App. 3d 876, 356 N.E.2d 999.) Also, before a court of review will reverse a conviction because of improper comments by the prosecutor, the defendant must show he was denied a fair trial in that the improper comment was a material factor contributing to his conviction. (*People v. Blackman* (1976) 44 Ill. App. 3d 137, 358 N.E.2d 50; *People v. Smith* (1972), 6 Ill. App. 3d 259, 285 N.E.2d 460.) We do not find that the comment here, even if improper, was of such a nature as to warrant the reversal of defendant's conviction.

Accordingly, for the reasons noted, we affirm the conviction.

Affirmed.

JIGANTI and ROMITI, JJ., concur.