THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. GEORGE ROGERS, Defendant-Appellant.

First District (5th Division)   No. 82—2813

Opinion field February 28, 1986.

Steven Clark and Donna Finch, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Joan S. Cherry, Peter D. Fischer, and Marla G. Clamage, Assistant State's Attorneys, of counsel), for the People.

JUSTICE LORENZ delivered the opinion of the court:

Following a jury trial, defendant George Rogers was convicted of State charges of aggravated assault, unlawful use of a weapon, and failure to have a State firearm owner's identification card as well as two violations of the Municipal Code of the city of Chicago, discharging a weapon within the city limits and failure to register a deadly weapon with the city of Chicago. The trial court imposed concurrent sentences of 180 days in the Cook County Department of Corrections on the State violations. For the municipal violation two $500 fines were imposed, but the court then determined that the fines were satisfied by time served by defendant while awaiting trial. The record also indicates that defendant, who was out on bond at the time of sentencing, was permitted to remain on this bond pending appeal.

On appeal defendant contends (1) he was denied a fair trial by the State's intentional introduction of inadmissible and prejudicial rebuttal testimony; (2) the trial court unduly restricted defense counsel in her opening statement and in her cross-examination of a State witness; (3) prejudicial comment by the prosecution during final argument denied defendant a fair trial.

We reverse and remand for a new trial.

The following pertinent testimony was adduced at trial. Chicago

police officer Robert McLin testified that at 9 p.m. on March 8, 1982, while off duty and out of uniform, he went outside of his Chicago apartment building at 6820 South Oglesby to start his car. A car was double parked in the street, blocking five or six cars in traffic, while defendant attempted to jump start a car at the curb. From inside his car McLin heard someone in one of the blocked cars ask defendant to move his car. Defendant swore at them and told them to go around him. McLin then heard a gunshot. He left his car and saw defendant fire two or three shots in the direction of the blocked cars. The defendant ran into McLin's building, and McLin pursued him. At the entrance McLin, who was holding his gun at his side, showed defendant his badge and said, "Police, stop." Defendant swore at McLin and ran into the hallway with a gun in his hand.

McLin again yelled at defendant to stop, identifying his office, but defendant continued running down the hall. Defendant then turned momentarily and pointed his weapon at McLin. McLin shot him as he started to run again, the bullet striking him in the back of his shoulder and knocking him to the ground. McLin then took defendant into custody and summoned the police. When they arrived, he gave them his gun as well as that of the defendant. At this time he observed the presence of a woman who had been outside with the defendant.

Officer Victor Raden testified that when he arrived on the scene McLin gave him his own gun as well as a five-shot revolver containing five spent cartridges. The defendant was not in possession of a firearm owner's identification card or a city gun registration. On cross-examination Raden testified that an investigation concerning the shooting was still was being conducted at the time of trial.

Wanda Flenoid, testifying for the defense, stated that she lived on the second floor at 6820 South Oglesby. At about 9 p.m. she was sitting in her car with the defendant. She got out of the car, taking along her gun from the glove compartment, and told defendant to warm up the car. However, when the car would not start she returned, placing the gun on the front seat, and flagged down a car for a jump start. Four or five cars became backed up and one of the drivers got out, swearing at the defendant and telling him to move the car. Defendant told him he was trying to get a jump. She then heard a shot from far away. Defendant told her to run and get down. She heard several shots around her, but did not see who fired them because she was on the ground.

Defendant asked her for her keys because he wanted to call the police. She gave them to him and subsequently went into the building herself. In the hallway she saw the defendant and a man who she sub-

sequently learned was Officer McLin. She asked what they were doing, and McLin said the defendant had been shooting out front. He showed her his police badge and then told defendant, "I shouldn't have shot you, man, but you kept running." Flenoid identified the gun recovered from the defendant as her weapon. On cross-examination she denied ever talking to Officer McLin after the day of the incident.

Testifying in his own behalf, defendant gave substantially the same account as Wanda Flenoid of the events leading up to the first shot. He further testified that the driver who swore at him then began walking toward him, pulled out a gun, and shot at him. Defendant warned Wanda to move out of the way, took her gun from the car and shot into the air. The man then got back in his car, backed up, and drove away.

Defendant testified that he placed the gun in his pocket, got Wanda's apartment keys from her, and "walked fast" into her building. As he proceeded down the hall someone said, "Come here." He kept going, but was then shot. A man subsequently identified as Officer McLin approached and asked if he had a gun. Defendant told him it was in his coat pocket. McLin told him he should have come, also saying, "I don't know why I did that." Wanda came in and asked McLin who he was. McLin identified himself as a police officer.

Defendant denied that McLin ever told him to halt. He also denied turning and pointing his gun at the officer.

In rebuttal Officer McLin testified that the only person he saw with a gun was the defendant. He denied telling defendant he should not have shot him.

■ We first consider defendant's contention that his right to a fair trial was prejudiced by the State's improper introduction of hearsay evidence suggesting that he had beaten Wanda Flenoid and threatened to beat her again if she testified against him. Although the court ultimately struck the testimony and instructed the jury to disregard it, defendant contends that these measures could not have eliminated the prejudice arising from what the jury heard.

As we have noted, on cross-examination of Wanda Flenoid the State elicited from her a denial that she had spoken to Officer McLin at any time after the date of the incident, either on the phone or in any other fashion. On rebuttal the State called McLin. Over repeated defense objections, the State was permitted to elicit his testimony that subsequent to the date of the incident he received a message to call someone named Wanda. He returned the call and the lady on the other end identified herself as Wanda, a friend of the person with whom McLin had the altercation. In response to a leading question as to who was the Wanda Flenoid that McLin knew, he stated that the defense

witness (indicating Wanda Flenoid) had been identified to him as Wanda Flenoid. Over defense objection on the grounds of hearsay and insufficient identification, the officer was then permitted to testify to what that person on the phone told him:

"She related that she and the defendant had had an altercation where he had beat her and if she showed up in court he was going to beat her again."

The court then sustained defense counsel's objection. While denying defendant's motion for a mistrial, the court did instruct the jury as follows:

"Ladies and gentlemen of the Jury, on second thought, I think anything about any relationship between the witness and the boyfriend—or the not [sic] boyfriend but friend—I'm going to ask you to disregard everything that the officer said pertaining to the telephone conversation. Please, disregard it and try to erase and please erase it from your mind when you deliberate. I have sustained the objection as to the content of that telephone call."

It is clear that this testimony was inadmissible. The State failed to establish by either direct or circumstantial evidence that the person to whom McLin spoke was defense witness Wanda Flenoid. McLin did not testify that he recognized the voice as that of Flenoid, nor did he even testify that he believed he was talking to the defense witness. (See *People v. Ostrand* (1966), 35 Ill. 2d 520, 221 N.E.2d 499.) Furthermore, the State's purported goal of impeaching Flenoid's denial of having talked by phone with McLin would have been accomplished merely by establishing the fact of such a call. The substance of the call was immaterial to the impeachment and amounted to hearsay upon hearsay, with the witness testifying to a second party's account of what the defendant had purportedly said.

The State contends, however, that McLin's testimony was not prejudicial to the defendant and that in any event any possible prejudice was cured by the court's instruction to the jury.

This testimony clearly suggested to the jury that the defendant had beaten Wanda Flenoid and then threatened her with another beating if she testified against him in this case. The impact of such information, if believed by the jury, would be devastating to defendant's case. The jury was presented with a credibility contest between the defendant and Officer McLin. Flenoid's testimony corroborated defendant's testimony that the gun he used was not his and that the first shot fired was not by the defendant. She testified that he fled to the apartment only to call the police. Her account of Officer McLin's

subsequent statement also suggested that the officer shot the defendant only because he kept running. However, by improperly eliciting Officer McLin's hearsay testimony, the State was able to present the jury with a purported admission by Flenoid that she had been threatened by the defendant with physical harm if she testified against him. This was calculated to destroy her credibility and also to suggest a consciousness of guilt on defendant's part.

■ It would take a juror with remarkable discipline to not be affected by this information in his or her deliberation. The cases cited by the State in support of the curative effect of the trial court's instructions to the jury serve only to highlight the prejudice arising in this case. Thus, in *People v. Meares El* (1980), 83 Ill. App. 3d 31, 403 N.E.2d 547, the State referred to the defendant as a loan shark. On appeal it was held that the court's instructions to the jury to disregard this comment cured any possible harm, but in doing so this court strongly suggested that the evidence in any event supported such a characterization. In *People v. Lindsay* (1978), 67 Ill. App. 3d 638, 384 N.E.2d 793, a witness' nonresponsive answer to a State question was deemed to have been cured by a court instruction to disregard it. But the *Lindsay* court stressed the overwhelming nature of the evidence against the defendant and the unresponsive nature of the answer, expressly finding that it was unsolicited by the State. In this cause, the evidence cannot be said to have been overwhelming. The State also appears to have known exactly what Officer McLin would say, having laid the groundwork for his testimony in cross-examination of Wanda Flenoid. The State has never contended that it was taken by surprise by McLin's account of the conversation. Under these circumstances, we find that this improperly adduced evidence was so highly inflammatory that the court's instructions to disregard it were insufficient to prevent prejudice to the defendant. (*People v. Scott* (1982), 108 Ill. App. 3d 607, 439 N.E.2d 130.) As our supreme court stated in *People v. Deal* (1934), 357 Ill. 634, 643, 192 N.E. 649, 652: "The human mind is not a slate, from which can be wiped out, at the will and instruction of another, ideas and thoughts written thereon."

Because of our determination of this issue, we need not address defendant's other contentions of error.

The judgment of the trial court is reversed and the cause remanded for a new trial.

Reversed and remanded for a new trial.

SULLIVAN, P.J., and MURRAY, J., concur.